[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO MODIFY ALIMONY (MOTION 144) PLAINTIFF'S MOTION FOR CONTEPT (MOTION 146) AND PLAINTIFF'S MOTION FOR CONTEMPT (MOTION 143)
The parties presented evidence concerning the defendant husband's Motion to Modify Alimony dated January 2, 2001, the plaintiff wife's Motion for Contempt dated March 28, 2002, and the plaintiff wife's Motion for Contempt dated December 3, 2001.
The essence of the defendant's motion to modify is that he is unemployed, having been laid off by his employer, and that "it is not likely that he will find employment in his field . ." Through her first motion for contempt, the plaintiff alleges that the defendant has failed to make court ordered alimony payments. In her second motion, the plaintiff alleges that the defendant has failed to maintain life insurance as required by their separation agreement.[1]
I. Statement of the Case
Examination of the court file reveals the following. This matter was originally brought in the superior court for the judicial district of Stamford-Norwalk. On March 5, 1996, the trial court, Novack, J., entered an order granting the plaintiffs request for a legal separation. That judgment incorporated an oral agreement that included alimony provisions and property distribution.[2]
On May 8, 2001, the defendant filed a Motion to Modify Alimony wherein he alleged that "[t]here has been a substantial change in the circumstances of the defendant."[3] The following month the plaintiff filed a Motion for Contempt wherein she alleged that the defendant had failed to pay alimony and to maintain life insurance as required by the separation agreement. This court addressed both the Motion to Modify and the Motion for Contempt on October 25, 2001. On that date, the court accepted an agreement by the parties wherein the defendant agreed to pay CT Page 12673 alimony in the amount of $1,000 per month, effective November 1, 2001. The defendant also agreed to pay an arrearage in the amount of $10,000 on or before November 1, 2001. Finally, the parties both agreed to make reasonable good faith efforts to maximize their income. At the time of the October 2001 order the defendant did not pursue his claim for retroactive modification.[4]
II. Facts of the Case
The plaintiff and defendant were married April 20, 1963; they separated on March 25, 1996. At the time of the separation, and for a long period prior to that date, the plaintiff suffered from a degenerating form of multiple sclerosis. At the time of the separation, the plaintiff resided in the former marital home, a condominium in Norwalk. Since that date she has moved to Spring Meadow, an assisted living facility in Trumbull.[5]
The plaintiff had suffered from multiple sclerosis for decades. As a result, she receives social security disability income. Nevertheless, at the time of her legal separation the plaintiff had fairly good health. Since that date, her physical condition has deteriorated. She now tires easily; there is a marked weakness in her legs together with numbness in her face and hands. She also faces internal stomach and bladder afflictions. As a result of her failing health, the plaintiff moved to the Trumbull facility. There, with the available transportation, housekeeping and medical assistance, she could continue to live independently.
The plaintiff has been depleting her assets in order to remain at Spring Meadow. Recognizing that she must move eventually, the plaintiff is searching another assisted living facility. Unfortunately, her income is limited to alimony, social security disability and a small pension payment. She cannot live alone. Contrary to the defendant's suggestion, the parties' adult daughter cannot serve as a permanent caretaker for her mother.[6]
The plaintiff moved from the marital home in Norwalk because she was unable to reside there safely. She could not afford to maintain the condominium and also secure the type of medical assistance her condition required. Furthermore, the condominium was not properly accessible. Contrary to the defendant's suggestion, assisted living is the plaintiffs only viable option.[7]
At the time of the legal separation, the defendant was employed, earning approximately $73,000 annually. In 2001, the defendant was laid off from his position as a textile sales manager. He received the maximum CT Page 12674 available unemployment compensation.[8] The defendant was 62 years old at the time of the present hearing. Since initiating these proceedings, the defendant has applied for and has received social security benefits. Because the defendant chose early retirement, his federal benefits were reduced.
It is clear that since the date of his termination the defendant has made little effort to secure new employment. He intentionally has limited his search to his former field of employment with the full knowledge that there are only a half dozen potential employers in that area. As a natural consequence, his efforts have been unsuccessful.
The defendant admits that in recent months his search has dwindled rather than expanded. He nevertheless suggests that he is diligently seeking employment. The facts belie this claim. He has merely contacted individuals with whom he is acquainted, limiting his efforts to, at most, thirty minutes a day for two days a week. Rather than look for employment outside of this depressed industry, he prefers to spend his time reading or watching television. His job search was further interrupted by a cruise taken in May 2002 to Bermuda.
Since the date of his separation, the defendant has resided with a friend who provides most of his living expenses. She also supplies monies for vacations. The defendant and this friend spend most summer weekends at their home on Candlewood Lake in New Fairfield. They jointly own a boat that they use at this vacation residence.
II. Legal Analysis
A. Motion to Modify
Connecticut General Statutes 46b-86 (a) provides in relevant part:
 . . . [A]ny final order for the periodic payment of permanent alimony or support or an order for alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either. . . . There shall be a rebuttable presumption that any deviation of less than fifteen per cent from the child support guidelines is not substantial and any deviation of fifteen per cent or more from the guidelines is substantial.
The statutory prerequisites for modification of alimony are clear. CT Page 12675 There must be a substantial change in circumstances. The defendant, the moving party, has the burden of "clearly and definitely" demonstrating that substantial change of circumstances. Richard v. Richard,23 Conn. App. 58, 61, 579 A.2d 110 (1990). "That party must demonstrate that continued operation of the original order would be unfair or improper." Harlan v. Harlan, 5 Conn. App. 355, 357, 496 A.2d 129 (1985).
Furthermore, "a party seeking modification of financial orders incident to a marital judgment must clearly and definitely establish an uncontemplated substantial change of the circumstances of either party which demonstrates that continuation of the prior order would be unfair and improper. Gleason v. Gleason, 16 Conn. App. 134. 136, 546 A.2d 966
(1988) (citations omitted). Such an uncontemplated substantial change must have occurred after the date of the original order. Gleason,16 Conn. App. at 137.
The defendant has not established that there is a substantial change in circumstances since the entry of the last set of financial orders. In November 2001 the defendant was receiving unemployment compensation. At the present time, he is receiving social security benefits. The net income is virtually identical. Therefore, the request for modification must be denied.
Even if this court were to ignore the November 2001 proceeding, the defendant's request would still fail. The court acknowledges that the defendant went from a successful position to a retirement pension. This constitutes a change in circumstances. That is not, however, the end of the inquiry. That change must legally warrant a modification of existing financial orders. Simply stated, a claim of "inability to pay" does not automatically entitle a party to a decrease of a financial order. It must be excusable and not brought about by the defendant's own fault.Sanchione v. Sanchione, 173 Conn. 397, 407, 378 A.2d 522 (1977); see alsoGleason v. Gleason, 16 Conn. App. 134, 137, 546 A.2d 966 (1988).
This court has considered the initial financial orders. That agreement provided a clear and unequivocal requirement that the plaintiff pay a set amount of alimony. There were no time limits. This court has also weighed all other operative variables presented by the parties. They include the parties' earning capacity, the degree to which the parties' continued state of unemployment was voluntary and the lifestyle maintained by each litigant. In the present case, earning capacity, not actual earnings, is the critical factor. Lucy v. Lucy, 183 Conn. 230, 234 (1981). Merely failing to obtain employment does not completely diminish an individual's capacity to earn income from gainful employment. Failing to look for employment or choosing to receive reduced social security at an early age CT Page 12676 certainly do not alter that capacity.
"It is particularly appropriate to base a financial award on earning capacity where there is evidence that the payor has voluntarily quit or avoided obtaining employment in his field." Hart v. Hart, 19 Conn. App. 91,95, 561 A.2d 151, cert. denied, 212 Conn. 813, 565 A.2d 534 (1989) (citation omitted). Clearly, the defendant's continued unemployment is as a result of his changed priorities. It is appropriate, therefore, that the court consider the defendant's earning capacity in determining a proper financial award. Miller v. Miller, 181 Conn. 610, 612-13,436 A.2d 279 (1980).
The defendant is intentionally under-employed. Rather than honoring the separation agreement or the November 2001 agreement by maximizing his income, the defendant has shunned employment. Instead of acknowledging his obligation to his wife of thirty-nine years, he chose early retirement. The plaintiff should not be forced to subsidize the defendant's life style choices. Nor should the defendant shift his obligations to the parties' daughter.
The amount set by agreement of the parties in November 2001, $1,000 per month, is a reasonable and equitable amount of alimony in the present case.
B. Motion for Contempt
Pursuant to Connecticut Practice Book section 25-27,[9] this court also heard evidence concerning the plaintiff wife's motion for contempt. The issue before the court is the plaintiffs allegation that the defendant has failed to make any alimony payments since March, 2001. There is unequivocal evidence that the defendant failed to pay the $1,000 per month mandated by the November 2001 agreement. The defendant's defense is that "in his mind" he has overpaid. To support this conjecture, he relies on a July 2001 file notation that all orders concerning alimony would be retroactive to July 2001.
Connecticut procedure authorizes motions for contempt, one of the few vehicles available to enforce compliance with court orders. Acknowledging the broad equitable powers of this court, ". . . a finding of indirect civil contempt must be established by sufficient proof that is premised upon competent evidence presented to the trial court in accordance with the rules of procedure as in ordinary cases." (Citations omitted; internal quotation marks omitted.) Sgarellino v. Hightower,13 Conn. App. 591, 595-96, 538 A.2d 1065 (1988). The burden of establishing a prima facie showing of contempt, in this case the willful CT Page 12677 disobedience of a court order, falls upon the plaintiff.
In the present case, the November 2001 agreement was clear. The defendant was obligated to pay $1,000 per month. "A judgment rendered in accordance with the stipulation of the parties is to be construed and regarded as a binding contract. . . ." Sablosky v. Sablosky,61 Conn. App. 66, 70, 762 A.2d 922 (2000), reversed on other grounds,258 Conn. 713, 784 A.2d 890 (2001)
This court is guided by the general principles governing the construction of contracts. "A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. . . ." (Citation omitted.) Issler v. Issler,250 Conn. 226, 235, 737 A.2d 383 (1999).
In the present case, it is clear that in November 2001 the parties agreed to a substantial reduction in the defendant's alimony obligation. They offered their agreement to the court. At no time did the defendant suggest that the court order must be retroactive. He could not sua sponte change his agreement after it became a court order.
The plaintiff's Motion for Contempt is granted. The defendant is ordered to pay $7,000, the alimony obligation he ignored since March of 2001. He is further ordered to contribute $4,000 toward the plaintiffs counsel fees.
Orders shall enter on these motions as herein noted.
JULIA DICOCCO DEWEY, JUDGE