ALICE RENEE SABLOSKY *v.* MICHAEL SABLOSKY
(AC 19261)

Spear, Pellegrino and Bishop, Js.[1]

---

[1] This appeal was argued before a panel comprised of Judges Spear, Pellegrino and Bishop. Although Judge Spear agreed with the other judges regarding the resolution of this appeal, he died before he had the opportunity to concur with the written decision. The parties stipulated, however, that they would not reargue the appeal to this court with a panel consisting of the original two judges and an additional judge. Rather, the parties stipulated that they would permit the remaining two judges alone to render a written decision.

Argued March 25—officially released September 17, 2002

*Henry B. Hurvitz*, for the appellant (defendant).

*William R. Moller*, with whom was *Michael Ruben Peck*, for the appellee (plaintiff).

*Opinion*

BISHOP, J. This case returns to this court on remand from our Supreme Court pursuant to its decision in *Sablosky* v. *Sablosky*, 258 Conn. 713, 784 A.2d 890

(2001). In reversing the prior decision of this court,[2] our Supreme Court held that (1) an ambiguity in the terms of a judgment does not, as a matter of law, preclude a finding of contempt for wilfully failing to comply with certain provisions of the dissolution judgment and (2) a court, when concluding that a finding of contempt is unwarranted on the basis of an ambiguity in the judgment, may nonetheless enter an appropriate order of payment on the basis of its interpretation of the judgment. Id. Before turning to the claims raised by Michael Sablosky, the defendant in this contempt action, we set forth the facts and procedural history relevant to his appeal.

On July 12, 1993, the trial court rendered judgment dissolving the parties' marriage. The judgment of dissolution incorporated a written provision providing postmajority support for the parties' two children, Shannon and Michael. Both parties, i.e., the plaintiff, Alice Renee Sablosky, and Michael Sablosky, previously had agreed to the postmajority support provision, which was titled, "Child Support/Education/Transportation," and stated: "The defendant husband shall be responsible for payment of college tuition and books for Shannon and Michael Jr., at a cost equivalent to the University of Connecticut at Storrs. . . . The defendant husband and plaintiff wife shall divide equally the cost of college room and board for Shannon and Michael Jr., at an expense not to exceed the cost of the University of Connecticut at Storrs. . . . The defendant husband shall provide Shannon with transportation, or reimbursement for the cost thereof, while she is an undergraduate college student. . . . The defendant husband and plaintiff wife shall divide equally the cost of automobile insurance for both Shannon and Michael Jr., while they are undergraduate college students."

---

[2] The prior decision of this court is *Sablosky* v. *Sablosky*, 61 Conn. App. 66, 762 A.2d 922 (2000), rev'd, 258 Conn. 713, 784 A.2d 890 (2001).

On June 15, 1998, the plaintiff filed a motion for contempt, in which she alleged that the defendant had failed to make some of the postmajority support payments. The court conducted a hearing on the motion, during which the parties offered conflicting interpretations of the scope and duration of the postmajority support provision. The plaintiff argued that the defendant was required to contribute to the children's postsecondary education, without limitation, as long as the children remained in college. The defendant urged the court to limit his obligation to "when the children are attending a four year institution of higher learning, pursuing a full-time course of study leading to a bachelor's degree." Alternatively, the defendant argued, his obligation should be limited to "an amount directly proportional to the course load successfully undertaken by the children during those semesters when they are enrolled in school."

The court concluded that the phrase "undergraduate college student," as used in the judgment of dissolution, was ambiguous. Aided by the evidence presented at the hearing relating to the intent of the parties, the court construed that phrase and concluded that the defendant was obligated to pay for "college tuition, one half of living expenses, car insurance and Shannon's transportation so long as each was enrolled in school." The court found, however that "the intention of the parties did not extend to enrollment beyond eight semesters, whether those were full-time or part-time semesters." The court also held the defendant in contempt "for his wilful failure to comply with the orders contained in the [dissolution] judgment," and ordered him to pay arrearages, attorney's fees and costs. Finally, the court found that neither Shannon nor Michael had graduated from college and concluded, on the basis of the defendant's failure to comply fully with the postmajority support provision and the ensuing harm to the children,

that Shannon is entitled to benefits under that provision for one more semester and that Michael is entitled to those benefits for four more semesters.[3]

The defendant appealed to this court, which reversed the judgment of contempt. *Sablosky* v. *Sablosky*, 61 Conn. App. 66, 72, 762 A.2d 922 (2000), rev'd, 258 Conn. 713, 784 A.2d 890 (2001). Holding that an ambiguity in an order precludes a finding that the order was wilfully violated, this court concluded that the defendant could not have wilfully violated the postmajority support order and, therefore, the trial court improperly held him in contempt. Id. This court also vacated the order requiring the defendant to pay arrearages, attorney's fees and costs. Id. Thereafter, the plaintiff appealed to our Supreme Court, which (1) reversed this court's decision on the basis of the conclusions summarized in the first paragraph of this opinion and (2) remanded the case to us with direction to consider the defendant's four remaining claims. *Sablosky* v. *Sablosky*, supra, 258 Conn. 717 n.2, 724. Additional facts and procedural history will be set forth as necessary.

I

The defendant first claims the court acted improperly in concluding that he had failed to prove that the plaintiff's motion for contempt was barred by at least one of the following three defenses: Laches, waiver and equitable estoppel. We disagree.

The following additional procedural history is relevant to our resolution of the defendant's claim. On September 8, 1995, the plaintiff filed a motion for contempt

[3] Our decision does not address or disturb the court's conclusion that the defendant is obligated to provide benefits for a total of five more semesters. In analyzing claims relating to the defendant's arrearage, we concerned ourselves solely with postmajority support payments that the defendant failed to make in the past, as an arrearage is, by definition, retrospective in nature.

in which she alleged that the defendant had failed to pay child support for Michael in the amount of $150 per week and had failed to pay for Shannon's transportation. By agreement of the parties, the court found that the defendant owed the plaintiff $6700. As stated previously, the plaintiff, on June 15, 1998, filed another motion for contempt. The second motion solely concerned expenses relating to the children's college education that were incurred between 1993 and 1998.

The defendant argued that the plaintiff should have raised her claims much earlier concerning his alleged failure to meet his obligations regarding college tuition, room and board and automobile insurance. He also contended that the court, in light of the plaintiff's foregoing testimony and her unexplained failure to raise those claims in her 1995 motion for contempt, was barred from bringing the second motion for contempt under the doctrine of laches, waiver or equitable estoppel.

On the basis of its assessment of the evidence, the court concluded that the defendant had not satisfied his burden of proving any of those three defenses. We agree.

A

We turn first to the defendant's claim of laches. "Laches consists of an inexcusable delay which prejudices the defendant. . . . First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant." (Citation omitted; internal quotation marks omitted.) *Farmers & Mechanics Savings Bank* v. *Sullivan*, 216 Conn. 341, 350, 579 A.2d 1054 (1990). Even if we assume arguendo that the plaintiff delayed in filing her second motion for contempt and that the delay was inexcusable, the record still does not contain any evidence that the defendant would have been in a more advantageous

position had the plaintiff filed her motion earlier. Absent a showing of prejudice, we conclude that the evidence is sufficient to support the court's conclusion that the defendant failed to prove laches.

B

The defendant also claims that the plaintiff impliedly waived her right to bring the second motion for contempt. "Waiver is the intentional relinquishment of a known right. . . . Waiver need not be express, but may consist of acts or conduct from which a waiver may be implied. . . . In other words, waiver may be inferred from the circumstances if it is reasonable to do so." (Citations omitted; internal quotation marks omitted.) *Wadia Enterprises, Inc.* v. *Hirschfeld*, 224 Conn. 240, 251–52, 618 A.2d 506 (1992). In the present case, little if any evidence of waiver was presented at the contempt hearing. On that basis, we conclude that it would not have been reasonable to infer waiver from the circumstances. Accordingly, the evidence is sufficient to support the court's conclusion that the defendant failed to prove waiver.

C

Third, the defendant claims that the plaintiff was equitably estopped from bringing her second motion for contempt.

"Under our well-established law, any claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. . . . It is fundamental that a person who claims an estoppel must show that he has exercised due diligence to know the truth, and that he not only did not know

the true state of things but also lacked any reasonably available means of acquiring knowledge." (Citations omitted; internal quotation marks omitted.) *Connecticut National Bank* v. *Voog*, 233 Conn. 352, 366–67, 659 A.2d 172 (1995).

In the present case, neither party presented evidence at the contempt hearing indicating the plaintiff had done or said something with the intent of inducing the defendant to believe that he was complying with the postmajority support provision. Accordingly, we conclude that the court correctly determined that the defendant failed to prove equitable estoppel.

## II

Next, the defendant claims that the court acted improperly in finding that his total arrearage was $44,063.58.[4] Specifically, he claims that the court miscalculated his arrearage for (1) both Shannon and Michael's room and board, (2) Shannon's tuition, (3) Shannon's transportation and (4) Shannon's automobile insurance.

In the present case, the court incorporated the agreement of the parties into its judgment of dissolution. A judgment rendered in accordance with such a stipulation is regarded and construed as a contract. See *Issler* v. *Issler*, 250 Conn. 226, 235, 737 A.2d 383 (1999); *Barnard* v. *Barnard*, 214 Conn. 99, 109, 570 A.2d 690 (1990). Consequently, "[a]n agreement between divorced parties regarding the postsecondary education of their children that is incorporated into a dissolution decree should be regarded as a contract." (Internal quotation marks omitted.) *Bonhotel* v. *Bonhotel*, 64 Conn. App. 561, 566, 781 A.2d 318, cert. denied, 258 Conn. 918, 782 A.2d 1241 (2001).

---

[4] For clarity, we note that this amount does not include attorney's fees and costs.

"There are no unbending rules as to the evidence by which [damages for breach of contract] are to be determined. . . . The general rule in breach of contract cases is that the award of damages is designed to place the injured party, so far as can be done by money, in the same position as that which he would have been in had the contract been performed. . . . In making its assessment of damages for breach of [any] contract the trier must determine the existence and extent of any deficiency and then calculate its loss to the injured party. The determination of both of these issues involves a question of fact which will not be overturned unless the determination is clearly erroneous." (Citation omitted; internal quotation marks omitted.) *L. F. Pace & Sons, Inc.* v. *Travelers Indemnity Co.*, 9 Conn. App. 30, 41, 514 A.2d 766, cert. denied, 201 Conn. 811, 516 A.2d 886 (1986). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Wren* v. *MacPherson Interiors, Inc.*, 69 Conn. App. 349, 354, 794 A.2d 1043 (2002). With those legal principles in mind, we now address the four specific claims raised by the defendant.

A

First, the defendant argues that the court miscalculated his arrearage for both Shannon and Michael's room and board. Specifically, he claims that (1) the arrearage as found by the court exceeds the cap set forth in the postmajority support provision for room and board payments, and (2) in determining the cost of the lodging and food provided to Shannon and Michael by the plaintiff when they lived in her home while attending college, the court improperly included

unrelated expenses listed in the plaintiff's financial affidavit.

The following additional facts and procedural history are relevant to the defendant's claim insofar as it concerns Shannon. Shannon graduated from high school in spring, 1992, and enrolled in Central Connecticut State University (Central) the following fall. Following the parties' divorce in July, 1993, Shannon attended Central in the fall of 1993, the spring of 1994, the spring of 1995, the fall of 1995, the spring of 1996 and the fall of 1996, a total of three academic years. The court found that the defendant had failed to pay Shannon's room and board for all six of those semesters. The court also found that the academic year consisted of approximately nine months or about 38.7 weeks. It further found that Shannon lived in an off campus apartment during the 1993-94 academic year and that the monthly rent for that apartment was $300. For the remaining four semesters, Shannon lived in and ate meals at the plaintiff's house, in West Hartford, free of charge.

In approximating the cost of the room and board provided to Shannon by the plaintiff, the court consulted the plaintiff's financial affidavit, which indicated $542.42 in weekly expenses. Because the plaintiff, on average, shared her house with two others, i.e., her children, Shannon and Michael, the court determined that the value of the room and board for the duration of an academic year was one-third of $542 per week multiplied by 38.7 weeks or about $6991. Thus, the total value of room and board for both of the academic years that Shannon lived in the plaintiff's house was $13,982. The postmajority support provision required the plaintiff and the defendant to divide the cost of room and board equally. Consequently, the court found that the defendant owed half of $13,982, or about $6991, for those four semesters, which equals $1747.75 per semester.

Regarding the remaining academic year (two semesters), during which Shannon lived in an off campus apartment, the court multiplied the monthly rent ($300) by nine months, yielding $2700, and added it to $6991, yielding a total cost of $9691.

We conclude that the award of $9691 is clearly erroneous because $1747.75 per semester exceeds the cap specified in the postmajority support provision, which, per party, equals half of the cost of room and board at the University of Connecticut at Storrs (UConn). The parties had agreed that for the relevant time period at UConn, a room costs $1430 per semester and board costs $1383 per semester, totaling $2813. Accordingly, the defendant was obligated to pay only up to $1406.50 each semester for room and board. Thus, his room and board arrearage relating to the four semesters that Shannon lived in the plaintiff's house is $5626 not $6991.

Additionally, the arrearage relating to the academic year that Shannon lived off campus is clearly erroneous because the defendant was obligated to pay only half of Shannon's rent, not all of it. Consequently, the defendant owes one half of $300 per month for half the rent, i.e., nine months or $1350, for that academic year.[5] In sum, the defendant's arrearage relating to Shannon's room and board is $5626 plus $1350, or $6976, which represents a reduction of $2715.

The following additional facts and procedural history are relevant to the defendant's claim insofar as it concerns Michael. Michael graduated from high school in 1995 and enrolled in a small Pennsylvania college the following fall. After a few weeks there, he returned to the plaintiff's house. He later attended Central part time in the spring of 1996, the fall of 1996, the spring of 1997 and the spring of 1998, a total of two academic years.

---

[5] Neither party presented evidence concerning the expenses Shannon incurred for board during that academic year.

While he attended Central, Michael lived in and ate meals at the plaintiff's house free of charge. The court found that the defendant had failed to pay Michael's room and board for all four of those semesters. Using the formula based on a 38.7 week academic year and the plaintiff's financial affidavit, the court found that the defendant owed the plaintiff $6991, which equals $1747.75 per semester.

We conclude that the award of $6991 is clearly erroneous because $1747.75 per semester exceeds the cap specified in the postmajority support provision. The defendant is obligated to pay only up to $1406.50 each semester for room and board. Thus, his room and board arrearage relating to the four semesters that Michael lived in the plaintiff's house is $5626, not $6991. That represents a reduction of $1365.

Finally, regarding both Shannon and Michael's room and board, the defendant claims that the court, in determining the cost of the lodging and food provided to them by the plaintiff when they lived in her home, improperly included unrelated expenses listed in the plaintiff's financial affidavit.

The plaintiff's financial affidavit states that she had weekly expenses of $542.42 and, as explained previously, the court relied on that figure in calculating the room and board expenses that she incurred. The defendant argues that that figure should have been reduced by $143 because weekly expenses unrelated to lodging and meals were counted, including cable television ($2.50), clothing ($20), transportation ($30), automobile insurance ($25), life insurance ($8.50), medical and dental insurance ($5), newspaper ($4), entertainment ($20) and retirement and investment plan ($6). Although we find the court's approach reasonable, we agree with the defendant that the court did, in fact, improperly include expenses that are unrelated to lodg-

ing and meals. Nevertheless, even if we assume arguendo that those unrelated weekly expenses totaled $143, a figure of almost $400 should have been used instead of $542.42, yielding a room and board cost of one-third of 38.7 weeks per semester multiplied by $400 per week, which equals $5160 per semester per child. Because that amount, on a semester basis, substantially exceeds the UConn charges for room and board ($2813), the defendant's obligation to Shannon and Michael is measured by the lesser amounts established previously in this opinion.

B

Next, the defendant claims that the court's finding that he had an arrearage of $10,500 relating to Shannon's tuition expenses is clearly erroneous. We disagree.

The following additional procedural history is relevant to the defendant's claim. During the contempt hearing, the plaintiff testified that the defendant owed $10,500 in tuition expenses for Shannon and that Shannon's tuition bills had been paid mostly through student loans. The plaintiff further testified that Shannon has three outstanding student loans that are coming due because she no longer is attending college. Finally, the plaintiff testified that Shannon still has one year of college to complete before earning an undergraduate degree. Shannon testified that the defendant had stopped paying her tuition bill in full in 1994. Furthermore, she indicated that the defendant did not provide her with any tuition assistance when she transferred briefly to the University of Arizona in the fall of 1994. Last, she testified that she paid her tuition for the spring, 1996, semester at Central.

The court found that "Shannon's failure to complete her four year college course by the end of the 1996 spring semester is attributable to the defendant's failure to contribute to the fall semester of 1994 or to contribute

to full-time tuition for the spring of 1996." Moreover, the court, in an articulation, stated: "The factual basis of the calculation that Shannon's tuition was $10,500 was the uncontroverted and credible testimony of the plaintiff. The defendant acknowledged not paying Shannon's tuition as required, but did not testify as to the amount he did not pay."

We acknowledge that "[a]lthough damages often are not susceptible of exact pecuniary compensation and must be left largely to the sound judgment of the trier . . . this situation does not invalidate a damage award as long as the evidence afforded a basis for a reasonable estimate by the [trier] of that amount." (Internal quotation marks omitted.) *Giulietti* v. *Giulietti*, 65 Conn. App. 813, 862, 784 A.2d 905, cert. denied, 258 Conn. 946, 947, 788 A.2d 95, 96, 97 (2001). On the basis of that reasoning, we decline to conclude that the court's finding concerning Shannon's tuition is clearly erroneous.

## C

The defendant claims also that the court's finding that he had an arrearage of $10,000 relating to Shannon's transportation expenses is clearly erroneous. We agree.

The following additional procedural history is relevant to the defendant's claim. During the contempt hearing, the following occurred. The plaintiff testified that she had to provide Shannon with transportation to attend college because the defendant had failed to provide it for her. The plaintiff explained that Shannon leased a new 1996 Volkswagen Jetta automobile and that the defendant "had originally agreed to cosign the lease and on the day of picking up the car, he changed his mind and told her he just wasn't going to do it. [Shannon] was stranded. She had already traded in her car and had no one else to cosign, so I did." The plaintiff testified that she "would like to relinquish cosignorship of the car." The plaintiff testified that the monthly pay-

ment was approximately $200 and that the duration of the lease was three or four years.

The court awarded $10,000 to the plaintiff for transportation costs. Thereafter, in an articulation, the court stated that it had "found credible the testimony of the plaintiff that Shannon incurred the sum of $10,000 to lease an automobile after the car she previously owned became inoperable and excessively expensive to repair."

Under the postmajority support provision, the defendant is obligated to provide transportation to Shannon only when she is attending college. Therefore, the period of time for which the defendant was obligated to provide transportation was of limited duration. The record discloses, however, that Shannon last attended college in the fall of 1996 and that she had entered into the lease agreement during the spring or summer of that same year. The record discloses also that at the time of the hearing, $10,000 was the amount necessary to pay off the remainder of the three or four year lease, not the sum of any transportation expenses Shannon had incurred while attending college. Under those circumstances, the payoff figure for the lease is not an accurate measure of the expenses incurred as a result of the defendant's failure to provide Shannon transportation after her automobile became inoperable and excessively expensive to repair. On that basis, we conclude that the court mistakenly awarded the plaintiff the sum of $10,000 without evidentiary support for that amount.

The record discloses that the plaintiff presented evidence sufficient to establish only that Shannon had entered into the lease agreement in 1996 before she attended college that fall and that the monthly lease payment was $200. Because the court, in determining the cost of room and board, did find that the length of

an academic year (two semesters) is approximately nine months, we conclude that the length of a semester is 4.5 months. Accordingly, the court instead should have awarded the plaintiff $900 on the basis of the $200 monthly lease payment multiplied by 4.5 months. We therefore conclude that the court's finding that the defendant's arrearage concerning Shannon's transportation was $10,000 is clearly erroneous and order that the court, on remand, reduce that arrearage by $9100.

### D

The defendant claims that the court's finding that he had an arrearage of $3200 relating to the cost of Shannon's automobile insurance is clearly erroneous. We agree.

The defendant argues that since the parties' divorce, Shannon has attended college only for six semesters, which is less than four years, yet the court found that he owed half the cost of four years of insurance, which is half of four years at $1600 per year, or $3200. The record discloses that Shannon attended Central in the fall of 1993, the spring of 1994, the spring of 1995, the fall of 1995, the spring of 1996 and the fall of 1996, a total of six semesters or three academic years. Although we conclude that the amount awarded by the court is clearly erroneous, the formula it used is reasonable. Thus, the court should have awarded half of three years at $1600 per year, or $2400. We therefore reduce the defendant's arrearage concerning Shannon's insurance by $800.

### III

The defendant claims that the court improperly held him in contempt. We disagree.

"In order to constitute contempt, a party's conduct must be wilful. . . . The contempt remedy is particularly harsh . . . and may be founded solely upon some

clear and express direction of the court. . . . One cannot be placed in contempt for failure to read the court's mind. . . . A good faith dispute or legitimate misunderstanding of the terms of an alimony or support obligation may prevent a finding that the payor's nonpayment was wilful. This does not mean, however, that such a dispute or misunderstanding will preclude a finding of wilfulness as a predicate to a judgment of contempt. Whether it will preclude such a finding is ultimately within the trial court's discretion. [Also, it] is within the sound discretion of the court to deny a claim for contempt when there is an adequate factual basis to explain the failure to honor the court's order." (Citations omitted; internal quotation marks omitted.) *Sablosky* v. *Sablosky*, supra, 258 Conn. 718.

"Judicial discretion, however, is always a legal discretion, exercised according to the recognized principles of equity. . . . Such discretion . . . imports something more than leeway in decision making and should be exercised in conformity with the spirit of the law and should not impede or defeat the ends of substantial justice. . . . [R]eversal is required where the abuse is manifest or where injustice appears to have been done." (Citations omitted; internal quotation marks omitted.) *Burton* v. *Browd*, 258 Conn. 566, 569–70, 783 A.2d 457 (2001).

In the present case, the defendant contended that he could not wilfully have failed to make the required payments because (1) the plaintiff never made him aware of the amount allegedly due and (2) he did not have the financial means to obey the order of the court.

The court nonetheless concluded that "[s]ince [the defendant was the obligor, it was [his] responsibility to ascertain the amounts he was required to pay, without placing the children in the position of having to solicit the funds. This finding is reinforced by the fact that the

defendant was not responsive to requests by Shannon for funds when she did ask for them." The court also reviewed the defendant's tax returns for the years 1995, 1996 and 1997 and concluded that "he had the ability based upon his income alone to make the payments required under the judgment."

The record discloses that during the contempt hearing, the plaintiff testified that the defendant ceased communicating with her in 1995, and never asked her about expenses relating to the children's room and board, tuition, transportation and automobile insurance. Additionally, Shannon testified that three months after the defendant remarried, he told her that he no longer was going to pay for her education when she reached twenty-one years of age. Furthermore, the defendant's tax returns, which were admitted into evidence, reveal that he earns a middle-class living from the profits generated by his small, long-distance trucking corporation.

The evidence in the record reasonably supports the conclusions reached by the court. On the basis of that evidence, we therefore conclude that the court did not abuse its discretion in finding the defendant in contempt.

IV

Fourth, the defendant claims that the court improperly granted the plaintiff's motion for attorney's fees. We disagree.

"The authority of the trial court to award attorney's fees following a contempt proceeding is well settled. Once a contempt has been found, [General Statutes] § 46b-87 establishes a trial court's power to sanction a noncomplying party through the award of attorney's fees. . . . Pursuant to § 46b-87, that sanction may be imposed without balancing the parties' respective financial abilities. . . . The award of attorney's fees in con-

tempt proceedings is within the discretion of the trial court." (Citations omitted; internal quotation marks omitted.) *Eldridge* v. *Eldridge*, 244 Conn. 523, 534, 710 A.2d 757 (1998). Given the circumstances of the present case, the award of attorney's fees in the amount of $5174.78 does not constitute an abuse of discretion.

The judgment is reversed as to the court's calculation of the arrearage owed by the defendant concerning room and board expenses and transportation expenses and the case is remanded with direction to reduce the defendant's total arrearage by $13,980. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.