[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION de: DEFENDANT'S MOTION FOR CONTEMPT (136) 
The defendant mother has brought this motion for contempt alleging that the plaintiff father has not paid for their daughter Julie's (dob 2/8/78) college and related expenses totaling approximately $57,309 plus interest and attorney's fees. The parties' marriage was dissolved on June 4, 1987 after an uncontested hearing upon oral agreement of the parties that was reduced to writing and incorporated by reference in the judgment (Defendant's Exhibit N). The relevant portions of the written separation agreement are:
"Article VIII Education
8.1 Provided the husband is financially able, he will pay for the children's postsecondary school costs, including tuition, room and board, books, supplies, fees and travel to and from school at the beginning and end of the terms and at regularly scheduled vacations of the college or university which the children attend.
8.2 The husband's obligation pursuant to this Article VIII shall cease when the children attain the age of twenty-three (23), die, marry or graduate from a four (4) year college or its equivalent, whichever event first occurs.
8.4 The husband shall have the option of fulfilling his intention of providing for a college education for the children by obtaining financial grants, loans, scholarships or other aid in his sole discretion, and the wife shall cooperate in providing any information to the husband required in connection with the application therefor."
The court finds the following facts. In September, 1996 Julie entered Parsons School of Design in New York City as a freshman. The plaintiff claims he was not told of the choice of college and he was unaware of it until he was given an invoice for the Fall semester. Paragraph 8.3 of the CT Page 15334-bc separation agreement requires the parties to consult and attempt to agree ". . . on a private secondary school education if either party feels that such education is in the best interests of the children". The term "secondary school education" refers to high school. It is silent on the present issue of postsecondary i.e. college education. The plaintiff paid the school a total of $23,240 for Julie's freshman year (Defendant's Exhibits O, P Q). The court notes that the check, which is part of Exhibit #O, is dated Aug 09, 96 and is payable to the school. The court concludes that the plaintiff paid the expenses for Julie's freshman year including cash for a grand total of approximately $25,000.
The college education Julie obtained spanned the period from September, 1996 to May, 2000. During this time the plaintiff paid court ordered weekly unallocated alimony and child support until January, 2000 when the order expired. The court notes this fact since it impacts his financial capacity. The plaintiff remarried in 1990 and he and his present wife have two minor children, Marisa, 10, and Melissa, 11. This fact also impacts his financial capacity. Throughout the period in question the plaintiff has been a self-employed roofer as well as a builder of homes. He executed financial affidavits for the calendar years 1997 through 2000. For 1997 he listed total weekly net income of $976, total weekly expenses of $1,146 and no creditors. For 1998 he listed total weekly net income of $412, total weekly expenses of $1,036 and no creditors. For 1999 he listed total weekly net income of $617, total weekly expenses of $961 and one creditor, Nick Zolla, for a debt incurred on 1/1/1999 with a balance of $75,000 due. For 2000 he listed total net income of $638, total weekly expenses of $646 and the same debt due Nick Zallo (sic) of $75,000. The court finds these four affidavits to be at least inaccurate or incomplete and the court gives them no credence. During this time he and his wife Clara sold 357 Oaklawn Ave., Stamford on March 31, 1998 for net proceeds of $311,820.41 (Defendant's Exhibit #Z) and purchased 135 Hardesty Road, Stamford for $256,500 less $8,100 credit received for repairs. On September 25, 1998 the plaintiff sold 315 Fairfield Avenue, Unit F, Stamford for $110,000 netting $110,794.74 (Defendant's Exhibit BB). The court concludes that the plaintiff was financially able to pay for the college expenses remaining after grants and scholarships were applied. He bore the burden to establish that he cannot comply or was unable to do so, Sablosky v. Sablosky, 258 Conn. 713,723. Further, if he was of the opinion that the judgment provisions dealing with college expenses needed to be clarified it was he who had the obligation to seek guidance from the court, Id., pp. 718-719.
Beginning with Julie's sophomore year the plaintiff was never again asked to contribute toward the college expenses of Julie. The defendant admitted that she never presented any bills to the plaintiff during CT Page 15334-bd Julie's remaining three years at Parsons. She also admitted that she never asked for the plaintiff's help in obtaining loans. The defendant claimed she called the plaintiff at the beginning of Julie's second year but he denied receiving any such call. There is nothing in the record of this hearing to indicate that the daughter ever spoke to her father regarding her college expenses. Must demand be made upon the plaintiff to pay college expenses incurred or about to be incurred as a condition precedent before he becomes liable to pay provided he is financially able to do so? This court determines the answer to be no.
The case of Sablosky v. Sablosky, 72 Conn. App. 408, after remand from the Supreme Court, considered a similar set of circumstances concerning college expenses. In that case the parties' responsibility was capped by reference to charges made by U. Conn. In the present case the plaintiffs limit of liability is capped by his being financially able to pay. The plaintiff has failed to prove an inability to pay. In this case there exists no adequate factual basis to explain his failure to obey the court's order, Id., p. 424. Further, the plaintiff did not dispute the various costs associated with the three remaining years of Julie's college education which the defendant set forth in her motion as $57,309 plus interest and attorney's fees. A more specific statement was filed by the defendant on June 11, 2001 (computer #141) setting forth a total college expense of $68,709 after deducting scholarships, grants and plaintiffs contribution of $25,000. The defendant also claims statutory interest of 10% totaling $12,286 and $7500 attorney's fees. The plaintiff did not dispute the various college charges but relied on the defendant's failure to keep him informed. After paying for Julie's freshman year the plaintiff was well aware of her college program. It was his obligation to attempt to defray the costs by exercising the option in paragraph 8.4 quoted above. The court concludes that the plaintiffs failure to pay the college expenses was wilful and he is found in contempt of the judgment order.
Civil contempt is coersive and conditional with its object being to bring the contemnor into compliance with the judgment by complying with purge orders that are within his ability to obey. Some of the college costs were met by loans from creditors serviced by Sallie Mae Servicing Corp. with balances still outstanding which bear interest at rates less than the statutory rate of 10%. It is the court's intention to shape a purge order that will allow the plaintiff, if it is possible, to assume these balances to take advantage of the payout schedule and to hold the defendant harmless and indemnified. The evidence does not allow the court to engage in a detailed accounting of the payments actually made to date by the defendant which payments include interest. Therefore, the court orders a further hearing for the sole purpose of creating a purge order CT Page 15334-be which will allow both parties to be heard regarding same. The court also reserves decision on the request for interest and the request for an attorney's fee allowance. The family clerk will schedule said hearing.
SO ORDERED.
 ___________________ HARRIGAN, J.T.R.
CT Page 15334-bf