## ALICE SABLOSKY *v.* MICHAEL SABLOSKY
### (AC 19261)

Spear, Zarella and Pellegrino, Js.

Argued September 11—officially released December 12, 2000

*Henry B. Hurvitz*, with whom was *Paula Gates*, for the appellant (defendant).

*Michael Ruben Peck*, with whom was *William R. Moller*, for the appellee (plaintiff).

*Opinion*

PELLEGRINO, J. The defendant, Michael Sablosky, appeals from the judgment of the trial court finding him in contempt for failure to pay certain educational

expenses of his children as ordered in the judgment of dissolution of his marriage with the plaintiff, Alice Sablosky. The defendant claims that the court (1) improperly construed the terms of the dissolution judgment, (2) abused its discretion by finding him in wilful contempt for the failure to comply with the orders contained in the judgment of dissolution, (3) improperly calculated the damages awarded to the plaintiff, (4) abused its discretion by awarding the plaintiff attorney's fees and costs, and (5) improperly found that the plaintiff's claim that the defendant was in contempt was not barred by the doctrines of waiver, laches and equitable estoppel. We reverse the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. On July 12, 1993, the trial court rendered judgment dissolving the marriage of the parties. A written postmajority support provision that was agreed to by the parties was incorporated into the judgment of dissolution. As of the date of the dissolution, the parties had two children, Shannon and Michael. In accordance with his agreement, the defendant was required to pay for the children's college tuition and books, and one half of the cost of room and board, but at an amount not to exceed the cost of attending the University of Connecticut at the campus in Storrs. The agreement also provided that the defendant pay other college related expenses for his children.[1] The plaintiff relinquished any claim for alimony in consideration of

---

[1] The judgment of dissolution specifically provided in relevant part: "The defendant husband shall be responsible for payment of college tuition and books for Shannon and [Michael] at a cost equivalent to the University of Connecticut at Storrs. . . . The defendant husband and plaintiff wife shall divide equally the cost of college room and board for Shannon and [Michael] at an expense not to exceed the cost of the University of Connecticut at Storrs. . . . The defendant husband shall provide Shannon with transportation, or reimbursement for the cost thereof, while she is an undergraduate college student. . . . The defendant husband and plaintiff wife shall divide equally the cost of automobile insurance for both Shannon and [Michael] while they are undergraduate college students."

the defendant's agreement to provide postmajority financial assistance for the children while they were "undergraduate college students."

On June 15, 1998, the plaintiff filed a motion for contempt, alleging that the defendant failed to pay the agreed upon college related expenses for the children. After a hearing, the court found that certain terms in the agreement were ambiguous. The court defined the ambiguous terms in accordance with its findings concerning the intent of the parties, found the defendant in contempt and determined the arrearage due the plaintiff. This appeal followed.

I

It is essential to the resolution of this appeal first to review the trial court's determination that the disputed terms of the agreement were ambiguous. There is no question that each party interpreted differently the terms "college" and "undergraduate college students." The controversy arose because neither child of the marriage pursued a traditional college career.

The facts surrounding this dispute are as follows. Shannon, the older child, attended Central Connecticut State University (Central) from the fall of 1992 until the spring of 1994, completing four semesters. In the fall of 1994, Shannon transferred her enrollment to the University of Arizona. The defendant did not contribute to Shannon's educational expenses at the University of Arizona. After a loan application was unsuccessful, Shannon dropped out of the University of Arizona and returned home, delaying her projected graduation by one semester. From the spring of 1995, until the fall of 1996, Shannon resumed her studies at Central on a part-time basis. The defendant then refused to pay any further college tuition or related expenses for Shannon, claiming that his obligation did not extend beyond the traditional four years of study.

Michael's college experience was even less conventional. In the fall of 1995, Michael enrolled in a small college in Pennsylvania, returned home after a few weeks and the following spring he enrolled at Central on a part-time basis. The defendant paid for Michael's part-time tuition for the spring and fall of 1996 and the spring of 1997, and his full-time tuition for the spring and fall of 1998. The defendant refused to pay for Michael's winter courses in 1997 or his summer courses in 1998. The court found that if Michael had pursued a traditional four year course of study, his anticipated graduation would have occurred in the spring of 1999.

The defendant argued before the trial court that the term "undergraduate college student" should be interpreted to mean one who lives on campus while enrolled in a full-time, four year program. The defendant argued, in the alternative, that his obligations should be calculated proportionally to the course load successfully undertaken by his children during those semesters when they are enrolled. The plaintiff sought to recover an amount owed by the defendant for the college expenses incurred by the children while they were part-time students attending classes beyond their fourth year of enrollment.

The court found that the term "undergraduate college student" was ambiguous and, contrary to the positions advanced by either party, held that the phrase meant a student attending a postsecondary school institution for four years. The court further found that the parties intended that the defendant would pay college tuition, half of the children's living expenses, car insurance and Shannon's transportation expenses as long as each was enrolled in school, except that the parties did not intend that the defendant pay for the children's college expenses for enrollment beyond eight semesters, either on a full-time or a part-time basis.

Our review of a trial court's construction of the parties' agreement is well settled. "A judgment rendered in accordance with the stipulation of the parties is to be construed and regarded as a binding contract. . . . Construction of [a term in] such an agreement is an issue of fact to be resolved by the trial court as the trier of fact, and subject to our review under the clearly erroneous standard." (Citation omitted.) *Albrecht* v. *Albrecht*, 19 Conn. App. 146, 152, 562 A.2d 528, cert. denied, 212 Conn. 813, 565 A.2d 534 (1989); *Barnard* v. *Barnard*, 214 Conn. 99, 109, 570 A.2d 690 (1990); *Greenburg* v. *Greenburg*, 26 Conn. App. 591, 595, 602 A.2d 1056 (1992); *Baldwin* v. *Baldwin*, 19 Conn. App. 420, 422, 562 A.2d 581 (1989). "The ultimate issue for an appellate court is whether the trial court could reasonably have concluded as it did. . . . In that regard, every presumption is given in favor of the correctness of the trial court's action." (Citations omitted.) *Greenburg* v. *Greenburg*, supra, 596; *Gallagher* v. *Gallagher*, 11 Conn. App. 509, 514, 528 A.2d 379 (1987).

We cannot conclude that the court's finding that an ambiguity existed was clearly erroneous. See *Baldwin* v. *Baldwin*, supra, 19 Conn. App. 423 (trial court's finding that term in marital dissolution agreement ambiguous not clearly erroneous).

II

Having determined that the court correctly found the term to be ambiguous, we must next determine whether the defendant could be held in contempt for his failure to abide by the terms of an agreement tainted with ambiguities.[2] The defendant claims that the trial court abused its discretion by finding him in wilful contempt for his failure to comply with the orders contained in the judgment of dissolution.

---

[2] In this appeal, it is not necessary for us to determine whether the trial court properly resolved the ambiguity.

In reviewing the defendant's claimed improprieties concerning the finding of contempt, we are guided by standards that limit our review. "[O]ur review [of a finding of civil contempt] is technically limited to questions of jurisdiction such as whether the court had authority to impose the punishment inflicted and whether the act or acts for which the penalty was imposed could constitute a contempt. . . . This limitation originates because by its very nature the court's contempt power . . . must be balanced against the contemnor's fundamental rights and, for this reason, there exists the present mechanism for the eventual review of errors which allegedly infringe on these rights. . . . [Our Supreme Court has] found a civil contempt to be improper or erroneous because: the injunction on which it was based was vague and indefinite . . . [and] the findings on which it was based were ambiguous and irreconcilable . . . . *Papa* v. *New Haven Federation of Teachers*, 186 Conn. 725, 731–32, 444 A.2d 196 (1982) . . . ." (Internal quotation marks omitted.) *Eldridge* v. *Eldridge*, 244 Conn. 523, 527–28, 710 A.2d 757 (1998); *Sender* v. *Sender*, 56 Conn. App. 492, 495–96, 743 A.2d 1149 (2000). "Although . . . plenary review of civil contempt orders extends to some issues that are not truly jurisdictional, its emphasis on fundamental rights underscores the proposition that the grounds for any appeal from a contempt order are more restricted than would be the case in an ordinary plenary appeal from a civil judgment." (Internal quotation marks omitted.) *Eldridge* v. *Eldridge*, supra, 528; *Sender* v. *Sender*, supra, 496.

Our scope of review in an appeal from a family relations decision also is limited. "The well settled standard of review in domestic relations cases is that this court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . In determining

whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Internal quotation marks omitted.) *Stewart* v. *Stewart*, 57 Conn. App. 335, 336, 748 A.2d 376, cert. denied, 253 Conn. 918, 755 A.2d 216 (2000); *Sender* v. *Sender*, supra, 56 Conn. App. 496.

On appeal, the defendant argues, and we agree, that he cannot be found in wilful contempt under the circumstances here where the terms of the parties' agreement are ambiguous. It is clear that "to constitute contempt, a party's conduct must be wilful. *Connolly* v. *Connolly*, 191 Conn. 468, 483, 464 A.2d 837 (1983). The contempt remedy is particularly harsh . . . and may be founded solely upon some clear and express direction of the court. . . . One cannot be placed in contempt for failure to read the court's mind." (Internal quotation marks omitted.) *Eldridge* v. *Eldridge*, supra, 244 Conn. 529; *Blaydes* v. *Blaydes*, 187 Conn. 464, 467, 446 A.2d 825 (1982).

In the present case, there was an adequate factual basis for the defendant to decline to make payments because of his interpretation of the agreement. The trial court abused its discretion by finding that the defendant was in wilful contempt of an agreement that contained ambiguous terms, and, therefore, we must reverse its decision.

### III

The defendant also claims that the court improperly calculated the damages awarded to the plaintiff, abused its discretion by awarding the plaintiff attorney's fees and costs, and improperly found that the plaintiff's claim was not barred by the doctrines of waiver, laches and equitable estoppel. Because we reverse the contempt finding, the award of damages, attorney's fees

and costs must be vacated.[3] Furthermore, in view of our determination that the contempt judgment must be vacated, it is not necessary for us to address the claims as to waiver, laches and estoppel.

The judgment is reversed and the case is remanded with direction to render judgment denying the motion for contempt and vacating the award of damages, attorney's fees and costs.

In this opinion the other judges concurred.

---

[3] We vacate the award only because it flows from the contempt finding that we have reversed. It is not necessary for us to address whether the court correctly determined the extent of the defendant's obligations pursuant to the agreement.