ALICE SABLOSKY *v.* MICHAEL SABLOSKY
(SC 16472)

Sullivan, C. J., and Borden, Norcott, Katz and Palmer, Js.

Argued September 12—officially released December 11, 2001

714

*William R. Moller*, with whom were *Benjamin T. Staskiewicz* and, on the brief, *Michael Ruben Peck*, for the appellant (plaintiff).

*Henry B. Hurvitz*, with whom, on the brief, was *Paula Gates*, for the appellee (defendant).

*Opinion*

BORDEN, J. The dispositive issue in this certified appeal is whether, as a matter of law, a party may be found in contempt of court for not complying with the ambiguous terms of a support agreement incorporated into a judgment of dissolution. Following our grant of certification,[1] the plaintiff, Alice Sablosky, appeals from the judgment of the Appellate Court reversing the judgment of the trial court. *Sablosky* v. *Sablosky*, 61 Conn. App. 66, 73, 762 A.2d 922 (2000). The trial court had held the defendant, Michael Sablosky, in contempt of court for wilfully failing to comply with certain provisions of the dissolution judgment regarding payment of the college expenses for the parties' children. The

[1] We granted the plaintiff's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly conclude that: (1) the trial court's judgment of contempt must be reversed; and (2) the trial court's award of damages, attorney's fees and costs must be vacated?" *Sablosky* v. *Sablosky*, 255 Conn. 938, 767 A.2d 1213 (2001).

Appellate Court held that: (1) the defendant could not be held in contempt because the terms of the judgment were ambiguous; id., 72; and (2) the trial court's order of damages, attorney's fees and costs must be vacated because they flowed from the finding of contempt. Id., 72–73. We conclude that an ambiguity in the terms of a judgment does not, as a matter of law, preclude a finding of contempt for the wilful failure to comply with the judgment. Accordingly, we reverse the judgment of the Appellate Court to the contrary.

The plaintiff moved for contempt against the defendant, alleging that the defendant had failed to comply with certain terms of the judgment dissolving the marriage of the parties. The trial court found the defendant in contempt of court, and ordered him to pay the arrearages and the plaintiff's attorney's fees and costs. The defendant appealed to the Appellate Court, which reversed the judgment of the trial court and directed it to render judgment for the defendant. Id., 73. This certified appeal followed.

The following facts and procedural history are relevant to this appeal. The marriage of the parties, who had two children, Shannon and Michael, was dissolved on July 12, 1993. Incorporated into the judgment of dissolution was a written postmajority support provision, which previously had been agreed to by the parties. One of the orders contained in the judgment, entitled "Child Support/Education/Transportation," required the defendant to contribute to the children's postsecondary education as follows: "The defendant husband shall be responsible for payment of college tuition and books for Shannon and Michael, Jr., at a cost equivalent to the University of Connecticut at Storrs. . . . The defendant husband and plaintiff wife shall divide equally the cost of college room and board for Shannon and Michael, Jr., at an expense not to exceed the cost of the University of Connecticut at

Storrs. . . . The defendant husband shall provide Shannon with transportation, or reimbursement for the cost thereof, while she is an undergraduate college student. . . . The defendant husband and plaintiff wife shall divide equally the cost of automobile insurance for both Shannon and Michael, Jr., while they are undergraduate college students."

On June 15, 1998, the plaintiff moved to hold the defendant in contempt of court, alleging that the defendant had failed to fulfill all of his obligations regarding the children's college expenses. At the hearing on the motion, the parties offered different interpretations concerning the scope and duration of the provisions. The plaintiff argued that the defendant was financially responsible, without limitation, for as long as the children remained in college. The defendant urged the trial court to limit his obligation to "when the children are attending a 4-year institution of higher learning, pursuing a full-time course of study leading to a Bachelor's degree" or, alternatively, to "an amount directly proportional to the course load successfully undertaken by the children, during those semesters when they are enrolled in school."

The trial court determined that the phrase in the support provision, "undergraduate college student," was ambiguous, and then interpreted it to mean "a student attending a postsecondary school for four years . . . ." Based on that interpretation, the court concluded that the defendant was responsible for "college tuition, one half of living expenses, car insurance, and Shannon's transportation so long as each was enrolled in school. However . . . the intention of the parties did not extend to enrollment beyond eight semesters, whether those were full-time or part-time semesters." The trial court found the defendant in contempt "for his wilful failure to comply with the orders contained

in the [dissolution] judgment," and ordered the defendant to pay arrearages, attorney's fees and costs.

The Appellate Court reversed the trial court's judgment of contempt, concluding that because the term, "undergraduate college student," was ambiguous, there could be no finding of wilfulness, which is a prerequisite for a finding of contempt. *Sablosky* v. *Sablosky*, supra, 61 Conn. App. 72. The Appellate Court then vacated the award of arrearages, costs and attorney's fees because, in its view, they flowed solely from the finding of contempt.[2] Id., 72–73.

I

The plaintiff first claims that the Appellate Court improperly reversed the trial court's judgment of contempt.[3] The Appellate Court concluded that, as a matter

[2] Because the Appellate Court reversed the finding of contempt based on a lack of wilfulness on the defendant's part to violate the order contained in the dissolution judgment, the Appellate Court did not consider the defendant's other grounds for reversing the contempt judgment, namely, that the defendant could not wilfully have failed to make the required payments because the plaintiff never had made him aware of the amount allegedly due, and that the defendant did not have the financial means to obey the order of the court. *Sablosky* v. *Sablosky*, Conn. Appellate Court Records & Briefs, September Term, 2000, Defendant's Brief pp. 21–28. Additionally, the Appellate Court did not address the defendant's remaining claims that "the [trial] court improperly calculated the damages awarded to the plaintiff, abused its discretion by awarding the plaintiff attorney's fees and costs, and improperly found that the plaintiff's claim was not barred by the doctrines of waiver, laches and equitable estoppel." *Sablosky* v. *Sablosky*, supra, 61 Conn. App. 72. Because we reverse the judgment of the Appellate Court on the limited certified issue of whether, as a matter of law, an ambiguity in a dissolution judgment precludes a finding of wilfulness, we leave these claims to be considered by the Appellate Court on our remand.

[3] The defendant argues that we should not consider the first certified question; see footnote 1 of this opinion; because the plaintiff has not adequately briefed it. Although the plaintiff's brief pays scant, if any, attention to the legal question of whether an ambiguity in the terms of a dissolution judgment precludes a subsequent finding of wilfulness for the failure to comply with it, the defendant has briefed this question, it is the question that we certified, and it raises an important question of law, the answer to which would give guidance to our trial courts. See *George* v. *Ericson*, 250 Conn. 312, 319, 736 A.2d 889 (1999). We therefore choose to address it.

of law, the defendant could not be held in contempt for failing to comply with ambiguous terms of a judgment because such an ambiguity prevented a finding of wilfulness. Id., 72. We conclude to the contrary.

"In order to constitute contempt, a party's conduct must be wilful. *Connolly* v. *Connolly*, 191 Conn. 468, 483, 464 A.2d 837 (1983). The contempt remedy is particularly harsh . . . and may be founded solely upon some clear and express direction of the court. . . . One cannot be placed in contempt for failure to read the court's mind. . . . . *Blaydes* v. *Blaydes*, 187 Conn. 464, 467, 446 A.2d 825 (1982). A good faith dispute or legitimate misunderstanding of the terms of an alimony or support obligation may prevent a finding that the payor's nonpayment was wilful. This does not mean, however, that such a dispute or misunderstanding will preclude a finding of wilfulness as a predicate to a judgment of contempt. Whether it will preclude such a finding is ultimately within the trial court's discretion. [Also, it] is within the sound discretion of the court to deny a claim for contempt when there is an adequate factual basis to explain the failure to honor the court's order. *Marcil* v. *Marcil*, 4 Conn. App. 403, 405, 494 A.2d 620 (1985)." (Internal quotation marks omitted.) *Eldridge* v. *Eldridge*, 244 Conn. 523, 529, 710 A.2d 757 (1998).

The reasoning of *Eldridge* is instructive in the present case. In *Eldridge*, the couple's marriage was dissolved in November, 1983. As part of the dissolution, the plaintiff was ordered to make monthly alimony payments, the amount of which was to be reduced if the defendant began earning more than $25,000 per year. Id., 525. The Appellate Court affirmed the judgment of the trial court, noting that once the defendant's income exceeded $25,000, "the initial award would be subject to modification *upon motion* by the plaintiff." (Emphasis added.)

*Eldridge* v. *Eldridge*, 4 Conn. App. 489, 494, 495 A.2d 283 (1985).

In 1987, the defendant began to earn in excess of $25,000, but did not notify the plaintiff until July, 1994. *Eldridge* v. *Eldridge*, supra, 244 Conn. 525. The plaintiff, believing that he was owed a credit for seven years of excess payments, unilaterally decided to withhold further payments, and filed a motion for an order to determine the extent of the credit. Id., 526. Subsequently, the defendant moved to hold the plaintiff in contempt for failing to comply with the current support order. Id. The trial court concluded that, although the plaintiff was owed a credit, he should be held in contempt because he had "wilfully . . . failed to pay alimony . . . ." Id.

On the plaintiff's subsequent appeal to this court from the judgment of contempt, we stated: "In rejecting the plaintiff's claim that this constituted a legitimate basis upon which to justify his behavior, the trial court stated: 'The short answer to that claim is that he was required to file a motion for modification before he would be entitled to any credit.' Relying on the Appellate Court's opinion in the plaintiff's appeal from the judgment of dissolution; *Eldridge* v. *Eldridge*, supra, 4 Conn. App. 494; the trial court determined that '[t]he plaintiff knew or should have known that he was not entitled to terminate the order unilaterally himself.' " *Eldridge* v. *Eldridge*, supra, 244 Conn. 529–30.

In affirming the judgment of contempt, we reiterated the rule that "[a]n order of the court must be obeyed until it has been modified or successfully challenged." (Internal quotation marks omitted.) Id., 530; *Mulholland* v. *Mulholland*, 229 Conn. 643, 649, 643 A.2d 246 (1994) ("a party has a duty to obey a court order however erroneous the action of the court may be" [internal quotation marks omitted]). We also stated that "[t]he

fact that the plaintiff exercised *self-help* when he was not entitled to do so . . . by disobeying the court's order without first seeking a modification was a sufficient basis for the trial court's contrary exercise of discretion. The court was entitled to determine that to exonerate the plaintiff would be an undue inducement to litigants' exercise of *self-help*." (Emphasis added.) *Eldridge* v. *Eldridge*, supra, 244 Conn. 532.

Although in *Eldridge*, the plaintiff previously had been put on formal notice by the intervening decision of the Appellate Court of the need to use the judicial process to seek a modification and thereby avoid self-help; *Eldridge* v. *Eldridge*, supra, 4 Conn. App. 494; and although that notice was a significant factor in our resolution of the case, in our view *Eldridge* did not turn on that fact. In pointing to the availability of a motion for modification based on a change in circumstances, the Appellate Court was merely articulating what the law required. Thus, the intervening language of the Appellate Court in *Eldridge* merely reaffirmed the plaintiff's legal obligation, namely, to move for modification, rather than to seek self-help.

Similarly, in the present case, we conclude that where there is an ambiguous term in a judgment, a party must seek a clarification upon motion rather than resort to self-help. The appropriate remedy for doubt about the meaning of a judgment is to seek a judicial resolution of any ambiguity; it is not to resort to self-help. We note that, despite any ambiguities in the dissolution judgment, the defendant acknowledged in the trial court that he was in violation of the court order regarding payment of his children's college tuition. Furthermore, at oral argument before this court he conceded that, regarding the tuition, he was in contempt of court and should have been ordered to comply. These concessions seriously undermine any contention that the ambi-

guity entitled the defendant to eschew seeking the court's advice and, instead, to resort to self-help.

Just as a "good faith belief that [the plaintiff] was justified in suspending periodic alimony payments"; *Eldridge* v. *Eldridge*, supra, 244 Conn. 528; did not automatically preclude a finding of wilfulness in *Eldridge*, neither does an ambiguous order in the present case. As previously stated, although there may be circumstances in which an ambiguity in an order may preclude a finding of contempt, "[w]hether it will preclude such a finding is ultimately within the trial court's discretion. It is within the sound discretion of the court to deny a claim for contempt when there is an adequate factual basis to explain the failure to honor the court's order." (Internal quotation marks omitted.) Id., 529.

This holding is especially important in the context of child support orders. " 'Both state and national policy has been, and continues to be, to ensure that all parents support their children and that children who do not live with their parents benefit from adequate and enforceable orders of child support. *Turner* v. *Turner*, 219 Conn. 703, 713–20, 595 A.2d 297 (1991); 42 U.S.C. § 651 et seq. (Part D of Title IV of the Social Security Act). Child support is now widely recognized as an essential component of an effective and comprehensive family income security strategy. See generally A. Houseman, "Poverty Law Developments and Options for the 1990s," 24 Clearinghouse Review 2, 5–7 (1990); P. Roberts, "Child Support and Beyond: Mapping a Future for America's Low-Income Children," 22 Clearinghouse Review 594 (1988). As with any income source, the effectiveness of child support in meeting the needs of children is, of necessity, increased when payments are made regularly and without interruption.' *Mulholland* [v. *Mulholland*, 31 Conn. App. 214, 224, 624 A.2d 379 (1993)]." *Mulholland* v. *Mulholland*, supra, 229 Conn. 651–52.

A different conclusion would not only " 'frustrate clearly defined public policy regarding the parental obligation to support minor children' "; id., 651; but it also would encourage parties to refrain from seeking clarifications of ambiguous court orders. The doors of the courthouse are always open; it is incumbent upon the parties to seek judicial resolution of any ambiguity in the language of judgments.

The present situation is similar to that in which a party makes a motion for modification of a support order on the ground of a substantial change in circumstances. Although one party may believe that his or her situation satisfies this standard, until a motion is brought to and is granted by the court, that party may be held in contempt in the discretion of the trial court if, in the interim, the complaining party fails to abide by the support order. See, e.g., *Mallory* v. *Mallory*, 207 Conn. 48, 57, 539 A.2d 995 (1988) (trial court did not abuse discretion in holding defendant in contempt for not making child support payments on grounds of inability to pay where defendant did not seek modification of support order until after plaintiff instituted contempt proceedings); *Bozzi* v. *Bozzi*, 177 Conn. 232, 238, 413 A.2d 834 (1979) (finding of contempt proper where defendant ceased making child support payments due to erroneous belief that plaintiff's failure to allow visitation suspended or terminated obligation, where defendant did not first seek and have granted modification of order).

The defendant, as did the Appellate Court, points to our language in *Eldridge* wherein we reaffirmed that "[o]ne cannot be placed in contempt for failure to read the court's mind"; (internal quotation marks omitted) *Eldridge* v. *Eldridge*, supra, 244 Conn. 529; as support for the proposition that an ambiguous order precludes a finding of contempt. *Sablosky* v. *Sablosky*, supra, 61 Conn. App. 72. We do not agree with the expansive

meaning attributed to that language by the defendant. The language in *Eldridge* merely suggests that, if a reviewing court determines that an order lacks such clarity as to make compliance impossible, giving due consideration to the action, or lack thereof, of the parties, a subsequent contempt finding would be improper. See *Eldridge* v. *Eldridge*, supra, 244 Conn. 529–32. The burden, however, remains on "[t]he contemnor [to] establish that he cannot comply, or was unable to do so." (Internal quotation marks omitted.) Id., 532. This is consistent with earlier decisions, where we have reversed contempt judgments where the contemnor has adequately demonstrated why such a judgment should not lie. See, e.g., *Issler* v. *Issler*, 250 Conn. 226, 241, 737 A.2d 383 (1999) ("[b]ecause the defendant's actions comported with the only sensible interpretation of the agreement, the trial court improperly found him in contempt of court"); *Baldwin* v. *Miles*, 58 Conn. 496, 502, 20 A. 618 (1890) ("we think the language of the injunction is too vague and indefinite to be the foundation of proceedings in contempt").

We emphasize that we hold only that a finding of wilfulness as a predicate to a judgment of contempt of court is not barred, as a matter of law, by the fact that the terms of the judgment involved are ambiguous. Such ambiguity is merely one of the factors for the trial court to take into consideration in exercising its discretion regarding a finding of wilfulness. Cf. *Eldridge* v. *Eldridge*, supra, 244 Conn. 529. Similarly, such ambiguity is one of the factors for a reviewing court to take into account in determining whether the trial court abused its discretion. We emphasize also that, even if the court determines that because of such an ambiguity contempt would not be warranted, it may nonetheless enter an appropriate order of payment based on its interpretation of the judgment.

## II

With respect to the second certified question, the plaintiff claims that the Appellate Court improperly vacated the trial court's award of damages, costs and attorney's fees. The Appellate Court vacated the award solely because it stemmed from what the Appellate Court regarded as the legally flawed contempt finding. *Sablosky* v. *Sablosky*, supra, 61 Conn. App. 73 n.3. Consequently, the Appellate Court did not consider the defendant's other challenges to the trial court's judgment. See footnote 2 of this opinion. It would be imprudent, therefore, for us to address the second certified question now. We leave that question to be considered by the Appellate Court in conjunction with the defendant's remaining appellate claims. Because we reverse the Appellate Court's judgment on the issue of contempt, we need not consider, therefore, whether the financial award was in error.

The judgment of the Appellate Court is reversed and the case is remanded to that court to consider the defendant's remaining claims on appeal.

In this opinion the other justices concurred.