******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MELISSA CHANG *v.* DAVID CHANG
(AC 42175)

Alvord, Prescott and Bright, Js.

*Syllabus*

The defendant, whose marriage to the plaintiff previously had been dis-
solved, appealed to this court from certain postjudgment orders of the
trial court granting in part the plaintiff's motions for contempt. The
plaintiff cross appealed to this court from certain postjudgment orders
of the trial court denying in part her motions for contempt and granting
the defendant's motion for contempt. The motions for contempt were
all predicated on a postjudgment order of the court incorporating a
stipulation by the parties. In her motions for contempt, the plaintiff
alleged, inter alia, that the defendant had wilfully violated the parties'
stipulation when he was late in returning the parties' minor son to her
house after school on four occasions and by refusing to work with the
guardian ad litem in mediation to resolve a parenting access schedule
issue. In his motion for contempt, the defendant alleged, inter alia, that
the plaintiff had wilfully violated an order of the court when she removed
the parties' minor daughter from private physical therapy sessions,
which had been prescribed by the daughter's physician. *Held*:

1. The trial court improperly granted the plaintiff's motion for contempt
   regarding the parties' parenting access schedule: the language in the
   stipulation underlying the motion, that the parties "shall work with the
   guardian ad litem" to adjust the schedule, was not clear and unambigu-
   ous, and the testimony of the guardian ad litem as to her interpretation
   of the relevant language was extrinsic evidence, which could only be
   considered when the order was found not to be clear and unambiguous
   and, thus, could not support a finding of contempt, and the defendant's
   conduct in engaging in a forty-five minute telephone conversation with
   the guardian ad litem constituted a reasonable interpretation of the
   relevant language; moreover, the additional qualifying phrase "if neces-
   sary" in the stipulation provision in question was ambiguous as it was
   susceptible to more than one reasonable interpretation; furthermore, the
   relevant section of the stipulation contained no clear and unambiguous
   language that instructed the parties how to proceed when they disagreed
   as to the necessity of adjusting the parenting access schedule.

2. The trial court properly denied the plaintiff's motion for contempt regard-
   ing the defendant's actions in returning the parties' minor son to her at
   the end of the school day; the stipulation language in question, that "the
   defendant shall be responsible for coordinating [their son's] timely return
   to the plaintiff's care" after school was not clear and unambiguous, as
   the parties did not specify an exact time the son must be returned to
   the plaintiff, and, on each of the four days at issue in the motion for
   contempt, the parties' son stayed after school to meet with his teachers
   and tutors or to practice the drums, which was a reasonable interpreta-
   tion of the relevant stipulation language.

3. The trial court erred in granting the defendant's motion for contempt
   regarding physical therapy for the parties' minor daughter, as its judg-
   ment finding that the plaintiff wilfully failed to comply with a court
   order that she engage in a good faith consultation with the defendant
   prior to making a decision about the children's health did not conform
   to the defendant's pleadings; in his motion, the defendant alleged that
   the plaintiff had wilfully failed to comply with a court order when she
   unreasonably withheld her consent for timely medical treatment for
   their daughter, failed to insure their daughter's medical needs were
   timely and appropriately met and failed to place their daughter's needs
   and interests above the plaintiff's personal preferences, thus, the basis
   on which the court found the plaintiff in contempt was not one of the
   bases pleaded by the defendant in his motion for contempt, and the
   defendant's contention that the court's order requiring good faith consul-
   tation and prohibiting the unreasonable withholding of consent must
   be read together was unavailing, as those obligations are two separate
   components of the court's order.

Argued January 16—officially released June 2, 2020

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the defendant filed a cross complaint; thereafter, the case was tried to the court, *Pinkus, J.*; judgment dissolving the marriage and granting certain other relief; subsequently, the court, *Hon. Stanley Novack*, judge trial referee, issued an order in accordance with the parties' stipulation; thereafter, the court, *Sommer, J.*, granted in part the plaintiff's motions for contempt and granted the defendant's motion for contempt, and the defendant appealed and the plaintiff cross appealed to this court. *Reversed in part; further proceedings.*

*Reuben S. Midler*, for the appellant-cross appellee (defendant).

*Yakov Pyetranker*, for the appellee-cross appellant (plaintiff).

*Opinion*

ALVORD, J. In this postdissolution matter, the defendant, David Chang, appeals and the plaintiff, Melissa Chang, cross appeals from the judgment of the trial court resolving their postjudgment motions for contempt. On appeal, the defendant claims that the court improperly granted the plaintiff's October 25, 2017 motion for contempt regarding her proposed adjustment to the parties' parenting access schedule. On cross appeal, the plaintiff claims that the court improperly (1) denied her November 15, 2017 motion for contempt regarding the timely return of the parties' minor son to her by the defendant after school and (2) granted the defendant's November 19, 2017 motion for contempt regarding withheld consent by the plaintiff to procure private physical therapy for the parties' minor daughter.[1] We agree with the defendant. We also agree with the plaintiff as to her second claim, but disagree with her first claim. Accordingly, we affirm in part and reverse in part the judgment of the court.

The following undisputed facts and procedural history are relevant to this appeal and cross appeal. On June 15, 2015, the court, *Pinkus*, *J.*, dissolved the parties' eleven year marriage and imposed orders, some of which concerned their two minor children, a son and a daughter. See *Chang* v. *Chang*, 170 Conn. App. 822, 823, 155 A.3d 1272, cert. denied, 325 Conn. 910, 158 A.3d 321 (2017). Following the dissolution of their marriage, the parties each filed several postjudgment motions. In order to resolve the issues underlying some of their several postjudgment motions, the parties entered into a multiparagraph stipulation on August 31, 2017 (August 31, 2017 stipulation), which the court, *Hon. Stanley Novack*, judge trial referee, approved and entered as an order of the court on the same day. The August 31, 2017 stipulation and one of the orders from Judge Pinkus' June 15, 2015 memorandum of decision underlie the parties' postjudgment motions for contempt, which were ruled on by the court, *Sommer*, *J.*, in a September 13, 2018 memorandum of decision. The defendant appeals and the plaintiff cross appeals from the September 13, 2018 ruling. Additional facts will be set forth as necessary.

We set forth the standard of review and relevant legal principles at the outset because they guide our analysis of the claims made in the appeal and cross appeal. "[O]ur analysis of a judgment of contempt consists of two levels of inquiry. First, we must resolve the threshold question of whether the underlying order constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt. . . . This is a legal inquiry subject to de novo review. . . . Second, if we conclude that the underlying court order was sufficiently clear and unambiguous, we must then determine whether the trial court abused its discretion

in issuing, or refusing to issue, a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding. . . .

"Civil contempt is committed when a person violates an order of court which requires that person in specific and definite language to do or refrain from doing an act or series of acts. . . . Whether an order is sufficiently clear and unambiguous is a necessary prerequisite for a finding of contempt because [t]he contempt remedy is particularly harsh . . . and may be founded solely upon some clear and express direction of the court. . . . One cannot be placed in contempt for failure to read the court's mind. . . . It is also logically sound that a person must not be found in contempt of a court order when ambiguity either renders compliance with the order impossible, because it is not clear enough to put a reasonable person on notice of what is required for compliance, or makes the order susceptible to a court's arbitrary interpretation of whether a party is in compliance with the order." (Citation omitted; internal quotation marks omitted.) *Bolat* v. *Bolat*, 191 Conn. App. 293, 297–98, 215 A.3d 736, cert. denied, 333 Conn. 918, 217 A.3d 634 (2019).

"To impose contempt penalties, whether criminal or civil, the trial court must make a contempt finding, and this requires the court to find that the offending party wilfully violated the court's order; failure to comply with an order, alone, will not support a finding of contempt. . . . Rather, to constitute contempt, a party's conduct must be wilful. . . . A good faith dispute or legitimate misunderstanding about the mandates of an order may well preclude a finding of wilfulness. . . . Whether a party's violation was wilful depends on the circumstances of the particular case and, ultimately, is a factual question committed to the sound discretion of the trial court. . . . Without a finding of wilfulness, a trial court cannot find contempt and, it follows, cannot impose contempt penalties. . . . The clear and convincing evidence standard of proof applies to civil contempt proceedings . . . ." (Citation omitted; internal quotation marks omitted.) *Hall* v. *Hall*, 182 Conn. App. 736, 747, 191 A.3d 182, aff'd,   Conn.   ,   A.3d (2020).

"It is . . . necessary, in reviewing the propriety of the court's decision to [grant or] deny the motion for contempt, that we review the factual findings of the court that led to its determination. The clearly erroneous standard is the well settled standard for reviewing a trial court's factual findings. A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made." (Internal quotation marks omitted.) *Auerbach* v. *Auerbach*, 113

Conn. App. 318, 326–27, 966 A.2d 292, cert. denied, 292 Conn. 901, 971 A.2d 40 (2009).

"In domestic relations cases, [a] judgment rendered in accordance with . . . a stipulation of the parties is to be regarded and construed as a contract. . . . It is well established that [a] contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . . Contract language is unambiguous when it has a definite and precise meaning . . . concerning which there is no reasonable basis for a difference of opinion . . . . In contrast, an agreement is ambiguous when its language is reasonably susceptible of more than one interpretation. . . . Nevertheless, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." (Internal quotation marks omitted.) *Bolat* v. *Bolat*, supra, 191 Conn. App. 298.

I

On appeal, the defendant claims that the court improperly granted the plaintiff's parenting access schedule adjustment motion for contempt because the relevant language of the August 31, 2017 stipulation underlying that motion is not sufficiently clear and unambiguous. We agree.[2]

The following additional facts, found by the court, and procedural history are relevant to this claim. In paragraph 3 of the August 31, 2017 stipulation (paragraph 3), the parties agreed that they "shall work with the guardian ad litem to adjust the parenting access schedule, if necessary, to accommodate the academic calendars of the children, the holiday and vacation schedules and to establish synchronicity between the parties' minor children and the members of the plaintiff's household." Immediately following Judge Novack's adoption of the August 31, 2017 stipulation as an order, during September and October, 2017, the plaintiff sought to adjust the parenting access schedule. Specifically, the plaintiff sought to have the defendant exchange with her the weekends that he was scheduled

to spend parenting time with their children. The plaintiff sought this adjustment of the parenting access schedule so that she would have parenting time at the same time that her boyfriend had his parenting time with his son from a prior marriage. The parties agreed to mediate the issue with the assistance of the guardian ad litem, Attorney Bonnie Amendola, who scheduled a meeting between the parties for October 26, 2017 (October meeting). Prior to the October meeting, Amendola contacted the defendant by telephone. During their telephone conversation, the defendant expressed to Amendola that he did not believe it was necessary to adjust the parenting access schedule because the son of the plaintiff's boyfriend was not a member of the plaintiff's household. He further told Amendola that such a change was not necessary to the best interests of his children. Finally, he expressed his concern that the plaintiff's new boyfriend presented a safety risk for the parties' daughter. For these reasons, the defendant did not want to participate in the October meeting and would not agree to swap weekends with the plaintiff. On October 19, 2017, Amendola notified the plaintiff that the defendant "was unwilling to meet to resolve the 'swap' issue" and that she was cancelling the mediation.

On October 25, 2017, the plaintiff filed her motion for contempt alleging that the "defendant was unwilling to engage in mediation to resolve the 'swap' issue and [that Amendola] therefore cancelled the [October] meeting." The plaintiff further alleged that "[t]he defendant's conduct [was] wilful." In its September 13, 2018 memorandum of decision, the court found that the "language of paragraph 3 [of the August 31, 2017 stipulation], clearly and unambiguously states [that] the parties shall work with the guardian ad litem." The court was dismissive of the defendant's suggestion that the language in paragraph 3 was susceptible to multiple reasonable interpretations, stating that "merely positing questions does not create ambiguity where the fundamental language of the [August 31, 2017] stipulation is clear." The court further found that "[t]he defendant's own testimony as confirmed by the testimony of [Amendola] . . . supports the finding that the reason the meeting did not proceed was that he refused to comply with a clear and unambiguous court order and that his refusal was wilful." Thus, the court "conclude[d] that the plaintiff . . . satisfied her burden of proof on [the parenting access schedule adjustment motion for contempt]."

Applying the previously set forth legal principles to paragraph 3 of the August 31, 2017 stipulation, we conclude that the language contained therein is not clear and unambiguous. See *Bolat* v. *Bolat*, supra, 191 Conn. App. 297 (analysis of court order is "legal inquiry subject to de novo review" (internal quotation marks omitted)). In analyzing whether paragraph 3 is clear and unambiguous, the court failed to discuss the language "work

with the guardian ad litem" and, thus, overlooked its potential ambiguity. Although the court did not assess the clarity of the language "work with the guardian ad litem," it seemingly agreed with Amendola's interpretation of that language because it found that the defendant did not "work with" her on the basis of his refusal to participate in the October meeting.[3] Amendola testified that her interpretation of "work with the guardian ad litem" required the parties to meet or to mediate with her. The plaintiff, by contacting Amendola to initiate the October meeting and by filing her motion for contempt after the defendant refused to participate in the October meeting, appears to have endorsed Amendola's interpretation of the language "work with the guardian ad litem."

The defendant's conduct, however, evinced an interpretation of the phrase "work with the guardian ad litem" that did not require him either to meet or to mediate in order to satisfy his obligation under paragraph 3 but, rather, permitted him to conduct a lengthy telephone conversation with Amendola in which he expressed his position on the plaintiff's proposed adjustment to the parenting access schedule. That the defendant conducted such a substantive telephone conversation is supported by the uncontroverted testimony of Amendola and the defendant. Their testimony was that the defendant, in the course of a forty-five minute conversation with Amendola, explained the reasons why he did not want to change the parenting access schedule or even discuss it further at the October meeting, namely, the son of the plaintiff's boyfriend was not a member of the plaintiff's household, a change to the parenting access schedule was not in his children's best interests, and he was concerned that the plaintiff's boyfriend presented a safety risk to the parties' daughter.

Paragraph 3 does not provide the parties with any discernible guidance as to what constitutes "work[ing] with the guardian ad litem." Nevertheless, we conclude that a reasonable interpretation of paragraph 3 is that the defendant's telephone conversation with Amendola constituted "work[ing] with the guardian ad litem." Stated differently, the defendant's lengthy telephone conversation with Amendola, in which he stated his reasons for not wanting to adjust the parenting access schedule, could reasonably be interpreted as "work[ing] with the guardian ad litem" because of the imprecision in the language used in paragraph 3. Because the language "work with the guardian ad litem" is susceptible to multiple reasonable interpretations, we conclude that paragraph 3 is ambiguous. See *Bolat* v. *Bolat*, supra, 191 Conn. App. 298 ("an agreement is ambiguous when its language is reasonably susceptible of more than one interpretation" (internal quotation marks omitted)).[4]

Additional ambiguity is present in paragraph 3 with

the use of the phrase "if necessary," which conditions the parties' obligation to take action under paragraph 3. First, the term "necessary" is susceptible to more than one reasonable interpretation. See *Auto Glass Express, Inc.* v. *Hanover Ins. Co.*, 293 Conn. 218, 232–33, 975 A.2d 1266 (2009) (Our Supreme Court concluded that the phrase "amount necessary" is ambiguous because "Webster's Third New International Dictionary defines the term 'necessary' as '[something] that cannot be done without: that must be done or had: absolutely required: essential, indispensable. . . .' Black's Law Dictionary (6th Ed. 1990), however, notes that the term '[n]ecessary' also 'may import that which is only convenient, useful, appropriate, suitable, proper, or conducive to the end sought.' "). Because the term "necessary" reasonably can be interpreted in more than one way, paragraph 3 is not clear and unambiguous.

Moreover, paragraph 3 fails to instruct the parties how to proceed when they disagree as to whether it is necessary to adjust the parenting access schedule, and cannot be construed to require a party to accept an adjustment proposed by the other party. Said another way, there is no clear and unambiguous language in paragraph 3 that obligated the defendant to accept the plaintiff's proposed adjustment to the parenting access schedule even if he were to "work with the guardian ad litem" in the way that the plaintiff interprets that language.[5]

In light of the foregoing, we conclude that the court improperly granted the plaintiff's parenting access schedule adjustment motion for contempt.

## II

In her cross appeal, the plaintiff claims that the court improperly denied her child return motion for contempt. We disagree.

The following additional facts, found by the court, and procedural history are relevant to the plaintiff's claim. In paragraph 4 of the August 31, 2017 stipulation (paragraph 4), the parties agreed to the following relevant language: "The plaintiff shall be responsible for coordinating [their son's] transportation from her residence to [private school] at the defendant's reasonable cost and the defendant shall be responsible for coordinating [their son's] timely return to the plaintiff's care at his sole expense." On November 15, 2017, the plaintiff filed a motion for contempt alleging that, on four days, the defendant failed to timely return their son to her home after his dismissal from his private school. Specifically, the plaintiff alleged that on September 20 and 29, and October 13, 2017, their son was dismissed from his private school at 2:40 p.m., picked up by the defendant between 4:15 and 4:28 p.m., and dropped off at the plaintiff's home at, around, or after 5 p.m. The plaintiff further alleged that on October 19, 2017, their son was

dismissed from his private school at 4 p.m. and dropped off by the defendant at the plaintiff's home at 5:30 p.m. The plaintiff alleged that the defendant's conduct was in violation of the August 31, 2017 stipulation and was wilful.

In its September 13, 2018 memorandum of decision, the court found that on each of the four days at issue in the child return motion for contempt, the parties' son stayed after school to meet with his teachers and tutors or to practice the drums, and neither he nor the defendant informed the plaintiff. The court further found that the parties' son stayed after school because "[s]tudents benefit from tutoring or other general academic enrichment as a result of after school access to teachers." The court determined that "[t]he scheduling matters of which the plaintiff complains are not examples of wilful violation[s] of clear and unambiguous court orders by the defendant, but lapses in communication between [the parties]." The court determined that "[t]he plain language of [paragraph 4] does not require the defendant to return [their son] by a specific time as [the] plaintiff argue[d]." Accordingly, the court concluded that "there is no basis for a finding of contempt under the facts presented."

We conclude that paragraph 4 is not clear and unambiguous. See *Bolat* v. *Bolat*, supra, 191 Conn. App. 297 (analysis of court order is "legal inquiry subject to de novo review" (internal quotation marks omitted)). Paragraph 4 states that "the defendant shall be responsible for coordinating [their son's] timely return to the plaintiff's care at his sole expense." Paragraph 4 does not specify that the defendant must return their son to the plaintiff immediately after students are dismissed from their classes at the private school. As a result, paragraph 4 is reasonably susceptible to an interpretation that the parties' son must be timely picked up by the defendant and driven to the plaintiff after he completes the academic and enrichment extracurricular activities that he is engaged in at his private school.[6] See *Bolat* v. *Bolat*, supra, 298 ("an agreement is ambiguous when its language is reasonably susceptible of more than one interpretation" (internal quotation marks omitted)). Had the parties wanted more precision as to what time their son must be returned by the defendant to the plaintiff, they could have specified an exact time in paragraph 4.[7] The parties did not. In light of that failure, we conclude that paragraph 4 is not clear and unambiguous as to when their son must be returned by the defendant to the plaintiff after getting picked up at his private school.[8] Accordingly, the court properly denied the plaintiff's child return motion for contempt.

### III

The plaintiff next claims that the court improperly granted the defendant's physical therapy motion for contempt because the basis on which the court found

the plaintiff in contempt differed from those pleaded by the defendant. We agree.

The following additional facts, found by the court, and procedural history are relevant to this claim. In his June 15, 2015 memorandum of decision, Judge Pinkus ordered, in relevant part, the following: "The parties shall have joint legal custody of the minor children. The plaintiff shall have final decision-making authority regarding the minor children after good faith consultation with the defendant. Such custody designation confers upon both parents the obligation to consult and discuss with each other regarding major decisions affecting the minor children's best interests, including, but not limited to matters of academic education, religious training, health and general welfare of the children. Neither parent will unreasonably withhold consent to matters affecting the children but shall endeavor to make decisions in such a way as the children's needs are timely and appropriately met, despite a parent's particular personal preference in relation to the other parent, and both the parents shall place the children's needs and interests above such individual and personal preferences." The parties' daughter has been diagnosed with "arthrogryposis, a neuromuscular condition which inhibits her ability to use her upper limbs. This condition is marked by contracture of her elbow, wrist and finger joints." The parties' daughter received private physical therapy with Ginette Courtney from ages two to six. Since the summer of 2017, when the plaintiff terminated their daughter's engagement in private physical therapy, the parties have disagreed over whether their daughter should continue to receive private physical therapy. Their daughter receives physical therapy at her elementary school, which is more limited than the private physical therapy she had received previously. The plaintiff believes that their daughter does not require private physical therapy because she engages in sports activities. On October 16, 2017, the daughter's treating physician wrote her the following prescription: "Physical therapy: eval & treat w/ attention to hamstring stretches & quad strengthening, ankle dorsiflexion strength b/l achilles stretching on right."

On November 19, 2017, the defendant filed the physical therapy motion for contempt. Therein, the defendant alleged that he had proposed that their daughter have her prescription filled by "work[ing] on a weekly basis with . . . Courtney." The defendant further alleged that the plaintiff "[had] refused to allow [their daughter] to treat with . . . Courtney and [had] failed to discuss with [him] or identify any other private physical therapist to fulfill the requirements of [their daughter's] prescription." Instead, the defendant alleged, the "plaintiff [had] opted to have [their daughter] continue to visit the physical therapist at the . . . public school which she now attends," which the defendant asserted was "inadequate to satisfy [their daughter's] prescription."

As a result, the defendant alleged, their daughter has not been treated "[d]espite more than one month having elapsed since the parties received the prescription." Accordingly, the defendant alleged that the plaintiff had "unreasonably withheld her consent for timely medical treatment for [their daughter]," "failed to insure that [their daughter's] medical needs are timely and appropriately met," and "failed to place [their daughter's] needs and interests above her personal preferences," all in violation of Judge Pinkus' order. The defendant further alleged that "[t]he plaintiff's conduct [was] wilful."

In its September 13, 2018 memorandum of decision, the court construed the physical therapy motion for contempt as alleging "that the plaintiff [was] in wilful violation of court orders as a result of her refusal to continue private physical and occupational therapy for the parties' . . . daughter . . . ." The court "[found] by clear and convincing evidence [that] the plaintiff [had] wilfully failed to comply with the clear and unambiguous court order that she engage in a good faith consultation with the defendant prior to making a decision about the children's health." The court thus "conclude[d] that the defendant [had] satisfied his burden of proof based on the clear and convincing evidence of the plaintiff's failure to engage in good faith consultation with the defendant about proper medical care for their child." Accordingly, the court granted the defendant's physical therapy motion for contempt.

The following legal principles are relevant to the plaintiff's claim. "Any determination regarding the scope of a court's subject matter jurisdiction or its authority to act presents a question of law over which our review is plenary. . . . Generally, it is clear that [t]he court is not permitted to decide issues outside of those raised in the pleadings. . . . When reviewing the court's decisions regarding the interpretation of pleadings, [t]he [motion] must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties. . . . Our reading of pleadings in a manner that advances substantial justice means that a pleading must be construed reasonably, to contain all that it fairly means, but carries with it the related proposition that it must not be contorted in such a way so as to strain the bounds of rational comprehension. . . .

"Pleadings have an essential purpose in the judicial process. . . . For, instance, [t]he purpose of the [motion] is to put the defendants on notice of the claims made, to limit the issues to be decided, and to prevent surprise. . . . [T]he concept of notice concerns notions of fundamental fairness, affording parties the opportunity to be apprised when their interests are implicated in a given matter. . . . Whether a [motion]

gives sufficient notice is determined in each case with reference to the character of the wrong complained of and the underlying purpose of the rule which is to prevent surprise upon the defendant. . . .

"[I]t is imperative that the court and opposing counsel be able to rely on the statement of issues as set forth in the pleadings. . . . [A]ny judgment should conform to the pleadings, the issues and the prayers for relief. . . . [A] plaintiff may not allege one cause of action and recover upon another. . . . The requirement that claims be raised timely and distinctly . . . recognizes that counsel should not have the opportunity to surprise an opponent by interjecting a claim when opposing counsel is no longer in a position to present evidence against such a claim." (Citations omitted; internal quotation marks omitted.) *Lynn* v. *Bosco*, 182 Conn. App. 200, 213–15, 189 A.3d 601 (2018).

With respect to the physical therapy motion for contempt, the court found the plaintiff in contempt for her "failure to engage in good faith consultation with the defendant about proper medical care for their child." The basis on which the court found the plaintiff in contempt was not one of the bases pleaded by the defendant in the physical therapy motion for contempt. The defendant alleged that the plaintiff "unreasonably withheld her consent for timely medical treatment for [their daughter]," "failed to insure that [their daughter's] medical needs are timely and appropriately met," and "failed to place [their daughter's] needs and interests above her personal preferences." The defendant's allegations are that the plaintiff violated specific obligations within Judge Pinkus' order. These obligations are separate and distinct from the obligation that the court cited as its basis for finding the plaintiff in contempt.

The defendant argues that "any unbiased reading of the language set forth in paragraph [2 of his physical therapy motion for contempt] would reveal that the order which the plaintiff was alleged to have violated contains reference to the requirements of a 'good faith consultation prior to the plaintiff exercising final decision making authority'; and, the requirement that 'neither parent will unreasonabl[y] withhold consent to matters affecting the children . . . .' Any reasonable construction of the original order of Judge Pinkus requires that those provisions be read together in a consistent whole as they are limitations on the exercise of 'final decision-making authority.' "

The defendant is correct that quoted within paragraph 2 of his physical therapy motion for contempt is the part of Judge Pinkus' order that pertains to "good faith consultation." The defendant did not allege, however, that the plaintiff violated the "good faith consultation" requirement of Judge Pinkus' order, thereby impermissibly depriving the plaintiff of fair notice that the issue of "good faith consultation" would be before

the court in the defendant's physical therapy motion for contempt. See *Lynn* v. *Bosco*, supra, 182 Conn. App. 214.

Moreover, we do not agree with the defendant's contention that the requirement of "good faith consultation" and the prohibition against unreasonably withholding consent must be read together. Although both obligations are related to decision-making for the parties' children, they are unique obligations within the decision-making process. Thus, the obligation to consult in good faith could be violated without triggering a violation of the obligation to not unreasonably withhold consent, and vice versa.

Because the requirement of good faith consultation and the prohibition against unreasonably withholding consent are two separate components of Judge Pinkus' order, in order for the plaintiff to have been found in contempt for her failure to consult in good faith regarding their daughter's physical therapy needs, the defendant was required to have pleaded such. There was no allegation in the defendant's physical therapy motion for contempt that the plaintiff refused to consult in good faith with the defendant concerning their daughter's physical therapy. As such, the court's judgment does not conform to the pleadings. See id. ("[a]ny judgment should conform to the pleadings, the issues and the prayers for relief" (internal quotation marks omitted)). Therefore, it must be reversed.[9]

The judgment is affirmed only as to the denial of the plaintiff's child return motion for contempt; the judgment is reversed as to the granting of the plaintiff's parenting access schedule adjustment motion for contempt and the defendant's physical therapy motion for contempt.

In this opinion the other judges concurred.

[1] Collectively, over a five week period, the parties had filed five postjudgment motions for contempt, three of which are at issue in this appeal.

[2] In light of our conclusion that the relevant language of the August 31, 2017 stipulation underlying the plaintiff's parenting access schedule adjustment motion for contempt is not clear and unambiguous, we do not consider whether the defendant's conduct was wilful. See *Puff* v. *Puff*, 334 Conn. 341, 365, 222 A.3d 493 (2020) ("[i]t is the burden of the party seeking an order of contempt to prove . . . *both* a clear and unambiguous directive to the alleged contemnor *and* the alleged contemnor's wilful noncompliance with that directive" (emphasis added)).

[3] In a portion of its analysis discussing the meaning of the term "synchronicity," as it is used in paragraph 3, the court stated that it "accepts and adopts the definition and interpretation of paragraph 3 of the [August 31, 2017] stipulation according to the testimony of [Amendola]." A clear and unambiguous order is a necessary predicate to holding a party in contempt. See *Bolat* v. *Bolat*, supra, 191 Conn. App. 297. Witness testimony as to his or her interpretation of language in an order is extrinsic evidence, which should only be considered when the order is found not to be clear and unambiguous and, thus, cannot support a finding of contempt. See *Parisi* v. *Parisi*, 315 Conn. 370, 384–86, 107 A.3d 920 (2015) (remanding case "to resolve the ambiguity in the parties' separation agreement through a determination of their intent after consideration of all available extrinsic evidence and the circumstances surrounding the entering of the agreement" after concluding "that the alimony buyout provision of the parties' separation agreement is ambiguous, thereby precluding a finding of contempt").

The court's statement "accepting and adopting" Amendola's interpretation

indicates that it may have improperly applied the well established principles of contract interpretation to assess whether paragraph 3 was clear and unambiguous. The plaintiff argues that "[j]ust because the court referred to an interpretation that accorded with its own, it does not necessarily follow that the court failed to reach independently the legal conclusion as to whether paragraph 3 was clear and unambiguous." Because we conclude that the court erroneously determined that paragraph 3 was clear and unambiguous, we need not decide whether it improperly relied upon extrinsic evidence to reach its determination.

[4] In the section of her brief that discusses the defendant's wilfulness, the plaintiff argues that "[i]f the defendant truly harbored a different interpretation of his obligation to engage with the guardian [ad litem] at the proposed meeting . . . then the basis for his refusal to engage further was nothing but a form of self-help. If anything, given that the defendant at no time obtained, much less sought, a clarification or modification of paragraph 3, it would have been error for the court *not* to find him in contempt." (Emphasis in original; footnote omitted.) To the extent that the plaintiff argues on appeal that the court's finding of the defendant in contempt should be upheld despite an unclear and ambiguous order; see *Sablosky* v. *Sablosky*, 258 Conn. 713, 720, 784 A.2d 890 (2001) ("we conclude that where there is an ambiguous term in a judgment, a party must seek a clarification upon motion rather than resort to self-help"); we disagree.

This case in no way presents facts warranting a finding of contempt against the defendant because he exercised self-help when faced with an unclear and ambiguous order. We emphasize that the defendant did not exercise self-help but, rather, attempted to comply with the requirement in paragraph 3 that he "work with the guardian ad litem" by speaking with Amendola on the telephone and stating his reasons for his opposition to the plaintiff's proposed adjustment to the parenting access schedule. See *In re Leah S.*, 284 Conn. 685, 700, 935 A.2d 1021 (2007) (concluding that because trial court order was "ambiguous at the outset, and therefore conferred broad discretion" on party, party, "far from employing self-help tactics . . . instead employed the broad discretion conferred upon it by the court").

[5] We acknowledge that the plaintiff alleged that the defendant acted contemptuously by failing to "work with the guardian ad litem," and she did not allege that he contemptuously disagreed with her proposed adjustment to the parenting access schedule. Nevertheless, the relief she sought was an implementation of the adjustment she desired. In the parenting access schedule adjustment motion for contempt the plaintiff requested, inter alia, that the court "order the defendant to immediately engage in mediation regarding the . . . 'swaps' with [her] and the guardian ad litem, and if the parties are unsuccessful in resolving [the] issue after two . . . mediation sessions, the guardian ad litem shall make a binding recommendation until further agreement by the parties or order by the court . . . ." The plaintiff further sought an "order that until further agreement by the parties or recommendation by the guardian ad litem, the weekend 'swaps' be instituted immediately in accordance with the schedules of the members of [her] household . . . ." If the plaintiff believed that an adjustment to the recently established parenting access schedule was necessary, a motion for modification of visitation under Practice Book § 25-26 would have been a more direct and effective approach to receiving impartial consideration of the adjustment she sought.

As an initial matter, the plaintiff has not provided us with any legal support for her position that the guardian ad litem, under the facts of this case, was authorized to make a binding recommendation on a child custody and visitation matter. Furthermore, had the plaintiff moved to modify the parenting access schedule, instead of filing a motion for contempt against the defendant, she might have received appropriate consideration and relief more expeditiously. The fact that the plaintiff filed the parenting access schedule adjustment motion for contempt *less than two months* after the parties entered into the global August 31, 2017 stipulation further informs our conclusion that filing a motion for contempt was imprudent. When the parties cannot agree on a decision impacting the parenting of their children, they should turn to the court to resolve their impasse in a manner that does not seek to punish the other party, unless it truly is warranted. See *Sablosky* v. *Sablosky*, supra, 258 Conn. 722 ("[t]he doors of the courthouse are always open; it is incumbent upon the parties to seek judicial resolution of any ambiguity in the language of judgments").

[6] The plaintiff argues that there was no evidence to support the court's findings that "[s]tudents benefit from tutoring or other general academic

enrichment as a result of after school access to teachers" and that "[their son] chose to stay after school for reasons that are important to a child's education." We conclude that there was evidence to support both of these findings.

With respect to the second finding, the defendant's uncontested testimony was that on three of the four days at issue in the child return motion for contempt their son stayed after school to meet with his teachers, to complete his homework, and to practice on a percussion set available at his private school because there was not a set at his home. On one of the four days, the defendant was late due to a "client meeting." On that one day, the court reasonably could have concluded that the defendant did not act wilfully. See *Hall* v. *Hall*, supra, 182 Conn. App. 747 ("[F]ailure to comply with an order, alone, will not support a finding of contempt. . . . Rather, to constitute contempt, a party's conduct must be wilful." (Internal quotation marks omitted.)).

[7] The court stated that specifying an exact time by which the parties' son must be returned to the plaintiff "would be [an] impractical, if not impossible" obligation for the defendant to satisfy. The plaintiff homes in on this language arguing that "[t]he court effectively determined that no order, be it crystal clear or utterly amorphous, can provide a sufficient basis for a violation in this particular case—none but one: whatever [the parties' son] may decide enriches his education." It is not our function to offer an opinion as to the parties' capabilities to abide by paragraph 4 in parenting their son were it to specify an exact time by which he is to be dropped off at the plaintiff's home by the defendant. Paragraph 4, in its current form, however, is not clear and unambiguous and, thus, cannot support a finding of contempt against the defendant.

[8] Because we conclude that paragraph 4 is not clear and unambiguous, we do not consider whether the defendant acted wilfully. See *Puff* v. *Puff*, supra, 334 Conn. 365; footnote 2 of this opinion.

[9] In addition, we note that we harbor the same concerns with regard to the defendant's motion for contempt that were articulated in footnote 5 of this opinion.

———————————————